810 P.2d 607

**The STATE of Arizona, Appellant,**

v.

**Edwardo PAREDES, Appellee.**

**No. 2 CA–CR 90–0319.**

Court of Appeals of Arizona,
Division 2, Department B.

Jan. 29, 1991.

Review Denied May 20, 1991.

**610**

Stephen D. Neely, Pima County Atty. by Kate Dawes, Tucson, for appellant.

Susan A. Kettlewell, Pima County Public Defender by John F. Palumbo, Tucson, for appellee.

## OPINION

ROLL, Presiding Judge.

The state appeals from the trial court's granting of defendant Edwardo Paredes' motion to suppress evidence. For the reasons set forth below, we vacate and remand.

## FACTS

Defendant Edwardo Paredes was stopped by Department of Public Safety (DPS) officers while operating a motor vehicle on Interstate 19 south of Tucson on November 7, 1989. The vehicle had no front or rear license plates and only a portion of a temporary paper registration was visible.

Officer Gordon Hopke asked the defendant for his driver's license and vehicle registration. The defendant had no driver's license, although he produced an Arizona identification card. He also furnished the officer a sales slip indicating that the car belonged to a third person. Officer Hopke proceeded to conduct a records check. While Officer Hopke was so engaged, Officer Aviles asked the defendant if he was carrying any illegal drugs, currency, or weapons. The defendant replied that he was not. The officer then asked the defendant if the officer could look through the vehicle. The defendant said yes. The officer walked around the vehicle, then retrieved a narcotics-detection dog from the DPS squad car in which he and Officer Hopke had been travelling. While the dog was standing next to the vehicle the defendant had been operating, it alerted to the trunk. The dog was then placed inside the vehicle and alerted to the back seat. The officers opened the trunk of the vehicle and found approximately 150 pounds of marijuana.

### Procedural Background

The defendant was indicted for unlawful possession of marijuana for sale and unlawful transportation of marijuana. The defendant filed a motion to suppress the marijuana. An evidentiary hearing was conducted. The trial court ordered that the evidence be suppressed, finding that (1) no reasonable suspicion existed to warrant asking the defendant any questions regarding contraband, and (2) even if reasonable suspicion for further questioning did exist, the defendant's consent to search was inadequate because "the Defendant was not told of the thoroughness of the search or that a dog would be used in the search."

### ISSUE ON APPEAL

On appeal, the state argues that the trial court abused its discretion in finding that the defendant did not consent to the search. We also address related issues presented by the parties.

## Standing

■ The state concedes that notwithstanding the fact that the defendant was operating a borrowed vehicle, the defendant has standing to contest the search of the vehicle. *State v. Acosta*, 166 Ariz. 254, 801 P.2d 489 (Ct.App.1990).

## Jurisdiction

■ The defendant argues that because the state's notice of appeal was flawed, this court lacks jurisdiction to entertain the state's appeal, citing *Litak v. Scott*, 138 Ariz. 599, 676 P.2d 631 (1984). The state's notice of appeal indicated that the state was appealing from "the Order confirming the dismissal of the indictment...." The notice also indicated that appeal was taken pursuant to A.R.S. § 13–4032(7). Dismissal occurred on the state's motion, following the trial court's granting of the motion to suppress. Although the notice of appeal incorrectly referred to appeal from the order of dismissal, it correctly cited A.R.S. § 13–4032(7) as the basis of appeal. A.R.S. § 13–4032(7) states:

An appeal may be taken by the state from:

\*       \*       \*       \*       \*       \*

7. An order granting a motion to suppress the use of evidence.

In *Litak*, the state attempted, among other things, to appeal from an order suppressing evidence. The notice of appeal stated that appeal was being taken from dismissal of certain complaints, and cited only A.R.S. § 13–4032(1). That provision refers to appeal from dismissal. The supreme court held that the *Litak* notice of appeal precluded appeal from the suppression order. The state's notice of appeal in the instant matter is distinguishable from that in *Litak*. The notice of appeal filed by the state is not fatally defective.

## Legality of Stop

The defendant concedes that the initial stop of the vehicle was lawful under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The trial court so found.

### 1. Request for Driver's License

■ The defendant contends that when the police officer requested that the defendant produce his driver's license, the stop exceeded the permissible scope of a founded suspicion contact under *Terry*. This argument, however, has been previously rejected. In *State v. Gradillas*, 25 Ariz. App. 510, 544 P.2d 1111 (1976), this court ruled that it is permissible for a law enforcement officer to immediately request production of a driver's license in connection with a stop concerning a possibly faulty vehicle registration.

The defendant also relies upon the recent decision of *State v. Mullen*, 75 Ariz.Adv. Rep. 42, (Ct.App. December 11, 1990). In *Mullen*, Division One of this court ruled that a *Terry* stop was unfounded where the officer had no basis for believing that some specific crime had been or was about to be committed. There, police detention was prompted by the defendant staring at a police car which drove past the bus stop where he was sitting. Here, the defendant concedes the propriety of the officer's initial contact.

### 2. Records Check

■ The defendant next contends that detaining the defendant while a records check was conducted constituted an unlawful detention of the defendant. However, in *State v. Puig*, 112 Ariz. 519, 520, 544 P.2d 201, 202 (1975), the supreme court held that law enforcement officers are entitled to detain a defendant while a records check is conducted when a defendant has been stopped for a safety violation and is unable to produce a valid driver's license or vehicle registration. Here, a records check was conducted after the defendant was unable to produce a valid driver's license. We find no error on this ground.

## Consent to Search

While the records check was being conducted, Officer Aviles (1) asked the defendant if illegal drugs, currency, or firearms were present in the vehicle, and (2) received the defendant's permission to look through

the vehicle. The officer utilized a dog to sniff the vehicle. The trial court found that both of these procedures were impermissible.

■ The standard of review for the granting or denial of a motion to suppress evidence is abuse of discretion. *State v. Carter,* 145 Ariz. 101, 110, 700 P.2d 488, 497 (1985). In reviewing a ruling on a motion to suppress, we must view the evidence in the light most favorable to upholding the trial court's ruling. *State v. Sheko,* 146 Ariz. 140, 141, 704 P.2d 270, 271 (App. 1985).

### A. Questioning of Defendant Regarding Presence of Drugs

■ The trial court concluded that Officer Aviles' questioning of the defendant regarding whether drugs were present in his vehicle constituted a violation of *Terry.* We note, however, that this questioning did not result in the officer obtaining any evidence. Furthermore, this questioning occurred while the records check was being conducted, and in no way resulted in impermissible delay of the defendant. Finally, in *Puig, supra,* the supreme court upheld the consensual search of the trunk of Puig's vehicle after a records check was completed.

The defendant's constitutional rights were not violated when Officer Aviles asked the defendant whether contraband was in the vehicle.

### B. Consent to Search Vehicle

The state argues that the proof presented at the suppression hearing established that the defendant consented to a search of the vehicle he was operating. In ruling upon the defendant's motion to suppress, the trial court stated:

> ... I don't believe that the consent to search was a knowing, voluntary and intelligent waiver of his Fourth Amendment rights and consent. Because I don't think he was told of the thoroughness of a search or that a dog would be used in the search.

### C. Voluntariness

■ A warrantless search is valid if conducted after voluntary consent is given. *State v. Schad,* 129 Ariz. 557, 563, 633 P.2d 366, 372 (1981), *cert. denied,* 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 693 (1982). The voluntariness of a defendant's consent to search is a question of fact determined from the totality of circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854, 875 (1973); *State v. King,* 140 Ariz. 602, 604, 684 P.2d 174, 176 (App.1984). The state must establish by clear and positive evidence that consent to search was freely and intelligently given. *State v. Wilkerson,* 117 Ariz. 143, 144, 571 P.2d 289, 290 (App.1977). Our search of the record, however, does not indicate any basis for believing that the defendant's consent was other than voluntary.

### D. Scope

■ The scope of a consensual search is limited to the scope of the consent given. *United States v. Gay,* 774 F.2d 368, 377 (10th Cir.1985); *United States v. Milian–Rodriguez,* 759 F.2d 1558, 1563 (11th Cir.), *cert. denied,* 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 112 (1985). Here, Officer Aviles first asked the defendant if he was carrying any illegal drugs, currency, or weapons. He then obtained the defendant's consent to look through the vehicle.

#### 1. Search of Trunk

■ The defendant contends that when he consented to the officer looking through the vehicle, he only consented to a search of the passenger compartments. The defendant failed to expressly delineate such a limitation, however. Prior to obtaining the defendant's consent, the officer inquired whether currency, drugs, or illegal weapons were present in the vehicle. After the defendant denied that any of these items were present in the car, the officer obtained the defendant's consent to look through the vehicle. The sequence of questions should reasonably have alerted the defendant that if consent were given, the officer would look in the passenger

compartments, in the trunk, under the hood, and possibly under the vehicle. *United States v. Torres,* 663 F.2d 1019 (10th Cir.1981), *cert. denied,* 456 U.S. 973, 102 S.Ct. 2237, 72 L.Ed.2d 847 (1982) (consent to complete search of vehicle included consent to search of air vent cover on door); *People v. Abrams,* 465 N.Y.S.2d 208, 95 A.D.2d 155 (1983) (consent to search car included consent to search trunk); *State v. Cargal,* 417 So.2d 811 (Fla. App.1982) (consent to search van included consent to search of duffel bag in van). *But see United States v. Rodriguez,* 888 F.2d 519 (7th Cir.1989) (consent to look inside vehicle did not constitute consent to remove door panels).

## 2. Use of Dog

The defendant also argues that the use of a drug detection dog during the search exceeded the scope of his consent. In this regard, the defendant relies upon *United States v. Morales,* 714 F.Supp. 1146 (D.N. M.1989), *rev'd,* 914 F.2d 200 (10th Cir.1990). In *Morales,* a federal district court ruled that the use of a drug detection dog to sniff the exterior of a vehicle at a roadblock constituted an illegal search. *Morales,* however, was reversed on appeal. In reversing the district court, the Tenth Circuit held that "police officers do not need an individualized reasonable suspicion of drug-related activity before subjecting a vehicle lawfully detained to a dog sniff...." *Id.* at 205. In upholding the legality of the search, the court held that "society does not recognize a reasonable privacy interest in the public airspace containing the incriminating odor." *Id.*

In *United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110, 121 (1983), the Supreme Court held that in the context of an airport search of luggage in an open area, the use of a drug detection dog does not constitute a search.

In *United States v. Gonzalez–Basulto,* 898 F.2d 1011 (5th Cir.1990), the defendant was stopped at an immigration checkpoint and consented to a search of the refrigerated tractor-trailer rig he was operating. Before the defendant arrived at the checkpoint, he knew that law enforcement agents were using drug detection dogs. At the checkpoint, the defendant observed the dogs. After he consented to the search, officers hoisted a dog into the trailer and the dog alerted to boxes containing cocaine. On appeal, the defendant argued that his consent was involuntary and that the agents' use of a dog during the search exceeded the scope of his consent because he had anticipated that only agents would conduct the search. In rejecting the defendant's argument, the Fifth Circuit ruled that the search did not exceed the scope of the defendant's consent because (1) the defendant knew before he arrived at the checkpoint that drug sniffing dogs were used to examine vehicles, (2) dogs were present when he gave his consent to search the tractor-trailer rig, and (3) the defendant said nothing when the dog was lifted into the trailer. *Id.* at 1013. The court also ruled that the use of the dog did not constitute a search. *Id.*

■■■ Here, the dog was present on the scene when the defendant's consent was given and the defendant did not revoke his consent when the dog was brought to the vehicle. *Id.; United States v. Mines,* 883 F.2d 801, 804–05 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 552, 107 L.Ed.2d 549 (1989). Perhaps even more importantly, however, the dog first alerted to the vehicle while standing outside the vehicle near the trunk. Clearly, this aspect of the incident did not constitute a "search."[1] *Place, supra; Morales–Zamora, supra; Gonzalez–Basulto, supra.*

The trial court erred in concluding that the use of a drug detection dog under the circumstances presented here resulted in a search exceeding the scope of the defendant's consent.

## CONCLUSION

The trial court abused its discretion in granting the defendant's motion to sup-

---

1. We need not address whether subsequent placing of the dog in the vehicle constituted a search.

**614**

press the marijuana seized from the vehicle the defendant was operating. The suppression order is vacated, and the matter is remanded for further proceedings consistent with this decision.

FERNANDEZ, C.J., and HOWARD, J., concur.