FILED BY CLERK

OCT 28 2010

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | 2 CA-CR 2010-0004 |
| | ) | DEPARTMENT A |
| Appellee, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| NATHAN DOUGLAS KINNEY, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20090511001

Honorable Teresa Godoy, Judge Pro Tempore
Honorable Richard S. Fields, Judge

AFFIRMED

---

Terry Goddard, Arizona Attorney General
  By Kent E. Cattani and Amy M. Thorson                              Tucson
Attorneys for Appellee


Robert J. Hirsh, Pima County Public Defender
  By David J. Euchner and Yana Krassilnikova,                        Tucson
  a student certified pursuant to Rule 38(d),          Attorneys for Appellant
  Ariz. R. Sup. Ct., 17A A.R.S.

---

H O W A R D, Chief Judge.

¶1　　　　After a jury trial, appellant Nathan Kinney was convicted of possession of a deadly weapon by a prohibited possessor. The trial court suspended the imposition of his sentence and placed Kinney on two years of probation. On appeal, Kinney argues the court erred in denying his motion to suppress a statement he made to a police officer after he was arrested. And, he contends, without that statement, there was insufficient evidence to support his conviction. For the following reasons, we affirm.

**Factual and Procedural Background**

¶2　　　　In reviewing the denial of a motion to suppress evidence, we consider only the evidence that was presented at the suppression hearing, which we view in the light most favorable to sustaining the trial court's ruling. *State v. Wyman*, 197 Ariz. 10, ¶ 2, 3 P.3d 392, 394 (App. 2000). In January 2009, two police officers went to a residence to look for Bobby Balentine, who was the subject of a felony warrant. Upon arriving at the residence, they found a person matching Balentine's description standing in the street near a truck. This person was later determined to be Kinney.

¶3　　　　After repeatedly asking Kinney to show his hands, one officer drew a weapon. In response, Kinney reached into the cab of the truck and the officers responded by moving to take "control of him." As Kinney was moved toward the back of the truck, a weapon was observed in a bag on the front seat and Kinney was then handcuffed. Kinney was escorted to a waiting patrol car and, when asked, responded that his name was Nathan Kinney and gave permission to check his wallet to verify his identity.

2

¶4	One of the officers read Kinney the *Miranda*[1] warning, advising him of his constitutional rights and Kinney indicated he was "willing to waive those rights." The officer asked Kinney if the weapon belonged to him and whether he had any prior convictions. Kinney responded that he had a prior conviction for armed bank robbery and that he had the weapon in the truck because he was going to sell it for a friend. Kinney also stated he did not believe his civil rights had been restored after the conviction. Kinney's conviction was confirmed and he subsequently was transported to the police station where he was interviewed by Detective Leikem.

¶5	Before trial, Kinney moved to suppress evidence obtained at the time of his arrest, claiming the arrest had been illegal. The trial court granted his motion, suppressing "all statements made by . . . Kinney in connection with his . . . arrest." Kinney also moved in limine to preclude the state from mentioning that his prior felony conviction was for bank robbery. At a hearing on the motion in limine, Kinney's attorney asserted that, while at the station after his arrest, Kinney had made additional statements to Leikem about his prior conviction; counsel asked the court to suppress the statements as unduly prejudicial. The court denied counsel's oral motion to suppress and, because Kinney did not admit the prior conviction, permitted the state to introduce his statement to Leikem. The court further agreed to sanitize the prior conviction. During the first trial, a witness testified that Kinney had been sentenced previously to fifteen years in prison. Because the length of the sentence had been excluded, the court then

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

granted Kinney's motion for mistrial. Kinney was convicted and sentenced after a second jury found him guilty of the charged offense. This appeal followed.

## Motion to Suppress

### A. Proper Standard of Review

¶6      Kinney first argues the trial court erred in denying his motion to suppress his statement to Leikem, claiming the police officers lacked reasonable suspicion to detain him after they had asked him his name and determined he was not Balentine. Thus, Kinney contends, his subsequent statement to Leikem at the police station should have been suppressed because it was tainted by his prolonged detention in violation of the Fourth Amendment. *See* U.S. Const. amend. IV; *Wong Sun v. United States*, 371 U.S. 471, 484-86 (1963) (evidence obtained directly or indirectly in violation of Fourth Amendment not admissible against victim of illegal search or seizure).

¶7      To preserve an argument for review, the defendant must make a sufficient argument to allow a trial court to rule on the issue.[2] *See State v. Fulminante*, 193 Ariz.

---

[2]Kinney argues in his supplemental brief that we "should not raise issues . . . that benefit the State at the expense of the defendant." We have discretion to address a significant, albeit waived, issue. *See State v. Aleman*, 210 Ariz. 232, ¶ 24, 109 P.3d 571, 579 (App. 2005) ("[W]aiver is a procedural concept that courts do not rigidly employ in mechanical fashion."); *see also State v. Smith*, 203 Ariz. 75, ¶ 12, 50 P.3d 825, 829 (2002) (appellate court may address argument otherwise waived); *State v. Payne*, 223 Ariz. 555, n.8, 225 P.3d 1131, 1145 n.8 (App. 2009) ("'If application of a legal principle, even if not raised below, would dispose of an action on appeal and correctly explain the law, it is appropriate for us to consider the issue.'"), *quoting Evenstad v. State*, 178 Ariz. 578, 582, 875 P.2d 811, 815 (App. 1993); *cf. State v. Lopez*, 217 Ariz. 433, n.4, 175 P.3d 682, 687 n.4 (App. 2008) (exercising discretion to address issues first raised in reply brief). And to consider the issue properly, we granted both parties supplemental briefing on the issue. *See State v. Lopez*, 223 Ariz. 238, ¶ 6, 221 P.3d 1052, 1054 (App. 2009) ("'The rule that issues not clearly raised in the opening brief are waived' serves 'to avoid

485, ¶ 64, 975 P.2d 75, 93 (1999) ("An objection is sufficiently made if it provides the judge with an opportunity to provide a remedy."). "And an objection on one ground does not preserve the issue [for appeal] on another ground." *State v. Lopez*, 217 Ariz. 433, ¶ 4, 175 P.3d 682, 683 (App. 2008).

¶8      In his initial motion, Kinney specifically identified "the gun, the heroin, the paraphernalia and the fact . . . Kinney was a prohibited possessor" but did not refer to any statements among the items of evidence he sought to suppress. He relied on *Wong Sun*, 371 U.S. 471, as authority for the suppression of the named items but did not cite any authority that would have alerted the trial court that he was seeking suppression of the statements he made at the police station. In its response to the motion to suppress, the state noted Kinney's statements to Leikem, but in the supplemental authority Kinney submitted in support of the motion to suppress, he only mentioned the statements he had made while he was in the back of the patrol car and asked the court to suppress these statements. None of the testimony presented at the hearing related to Kinney's statement to Leikem at the police station.

¶9      In its minute entry ruling on the motion, the trial court made findings of fact and conclusions of law that only related to the events surrounding Kinney's initial

surprising the parties by deciding their case on an issue they did not present and to prevent the court from deciding cases with no research assistance or analytical input from [both] parties.'"), *quoting Meiners v. Indus. Comm'n*, 213 Ariz. 536, n.2, 145 P.3d 633, 636 n.2 (App. 2006). Although we generally will not address an issue not raised below to reverse the trial court, here we address a waived issue to uphold the trial court. *See State v. Aguilar*, 218 Ariz. 25, ¶ 22, 178 P.3d 497, 503 (App. 2008) (we will uphold trial court if correct on any ground). Finally, courts have an interest in preventing gamesmanship with defendants reserving the "hole card" for appeal. *State v. Valverde*, 220 Ariz. 582, ¶ 12, 208 P.3d 233, 236 (2009).

apprehension. The court did not mention Kinney's subsequent interrogation by Leikem or even the fact that Kinney later was taken to the police station. In its ruling on the motion to suppress, the court stated that it would suppress "all statements made by . . . Kinney . . . in connection with his defacto arrest." But the testimony at the hearing did not include the statements Kinney had made at the station. Nor did the motion address any such statements. Therefore the minute entry ruling suppressing certain evidence did not encompass the statement made at the station.

¶10 Comments subsequently made by the trial court and defense counsel reinforce that neither believed this ruling encompassed the statements Kinney had made at the police station. Defense counsel asked the court, at a later hearing on a different motion, whether it was going to suppress Kinney's statement to Leikem. At that point, defense counsel argued the prejudicial effect of the statement outweighed the probative value but did not claim the statement was tainted as a result of the illegal arrest. In ruling, the court also addressed the admissibility of the statement in terms of its probative value versus its prejudicial effect and concluded it was admissible because it was "an admission against interest." Moreover, before Kinney's second trial, the newly-assigned judge tried to clarify the parties' and the court's understanding of the previous ruling. Defense counsel did not assert that the previous judge had ruled the statements were inadmissible or that the statements were inadmissible because they resulted from an illegal arrest. And, again, Kinney's counsel did not cite any relevant authority to support the argument that the statements were tainted by an illegal arrest or to address the issue of attenuation.

6

¶11        Neither the trial court nor defense counsel made any statements during any of the proceedings relating to the inadmissibility of the statements based on the illegal arrest. Although the court ruled that the probative value of the statements outweighed their prejudicial effect, it did not decide whether the statements to Leikem at the police station were tainted by the illegal arrest. Kinney's objection based on the prejudicial effect of the statements outweighing the probative value did not preserve the issue of whether the statements were tainted by the illegal arrest. *See Lopez*, 217 Ariz. 433, ¶ 4, 175 P.3d at 683. Therefore, Kinney has forfeited the right to seek relief for all but prejudicial, fundamental error. *See State v. Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d 601, 607 (2005) (failure to object to alleged error in trial court results in forfeiture of review for all but fundamental error).

**B.        Suppression of Statement**

¶12        Fundamental error is "'error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial.'" *Id.* ¶ 19, *quoting State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984). A defendant is entitled to relief only if he establishes that: (1) an error occurred; (2) the error was fundamental; and (3) the error resulted in prejudice. *See id.* ¶¶ 19-20.

¶13        In determining whether any error occurred, we review a trial court's decision whether to grant a motion to suppress for an abuse of discretion. *See State v. Dean*, 206 Ariz. 158, ¶ 9, 76 P.3d 429, 432 (2003). "[B]ut we review de novo mixed questions of law and fact and the trial court's ultimate legal conclusions as to whether the

7

totality of the circumstances warranted an investigative detention and whether its duration was reasonable." *State v. Teagle*, 217 Ariz. 17, ¶ 19, 170 P.3d 266, 271 (App. 2007).

¶14        A limited investigatory stop "'is permissible under the Fourth Amendment if supported by reasonable suspicion' that criminal activity is afoot." *State v. Rogers*, 186 Ariz. 508, 510, 924 P.2d 1027, 1029 (1996), *quoting Ornelas v. United States*, 517 U.S. 690, 693 (1996); *see also Terry v. Ohio*, 392 U.S. 1, 30-31 (1968). Reasonable suspicion that a person is wanted in connection with a completed felony also can justify a brief stop. *United States v. Hensley*, 469 U.S. 221, 229 (1985). A citizen's report of unusual activity is sufficient to give rise to reasonable suspicion. *State v. Gomez*, 198 Ariz. 61, ¶ 19, 6 P.3d 765, 768 (App. 2000). In the course of an investigatory stop, officers may detain a suspect, using reasonable force, while they gather more information about a reported crime. *State v. Aguirre*, 130 Ariz. 54, 56, 633 P.2d 1047, 1049 (App. 1981). In determining whether the duration of a stop is reasonable, we consider "'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.'" *Teagle*, 217 Ariz. 17, ¶ 32, 170 P.3d at 275, *quoting United States v. Sharpe*, 470 U.S. 675, 686 (1985).

¶15        Here, the officers had received a tip that Balentine, for whom there was an outstanding felony arrest warrant, was at a particular address. Officers found Kinney at that location and he somewhat matched Balentine's physical description. Based upon the totality of the circumstances, the officers had reasonable suspicion that Kinney might be

8

Balentine and, therefore, was involved in criminal activity. Accordingly, the officers' initial investigatory detention was permissible. *See Aguirre*, 130 Ariz. at 56, 633 P.2d at 1049.

¶16 Once the officers determined that Kinney was not Balentine, however, they no longer had reasonable suspicion that he was wanted in connection with the arrest warrant and therefore were required to end Kinney's detention. *See Teagle*, 217 Ariz. 17, ¶ 32, 170 P.3d at 275. By detaining Kinney longer than necessary to determine whether he was Balentine and continuing to question him, the officers exceeded the permissible scope of the initial investigatory detention. *See id.* The trial court properly suppressed the statements Kinney made at the scene after officers learned he was not Balentine. *See Florida v. Royer*, 460 U.S. 491, 501 (1983) (noting "statements given during a period of illegal detention are inadmissible even though voluntarily given if they are the product of the illegal detention"); *In re Maricopa County Juv. Action No. JT30243*, 186 Ariz. 213, 215-16, 218, 920 P.2d 779, 781-82, 784 (App. 1996) (confession resulting from illegal detention properly suppressed). And the court could have suppressed the statements at the station, had it been requested to do so.

¶17 Citing *State v. Paredes*, 167 Ariz. 609, 810 P.2d 607 (App. 1991), and *State v. Ybarra*, 156 Ariz. 275, 751 P.2d 591 (App. 1987), however, the state claims the officers were permitted to detain Kinney, even after ascertaining he was not Balentine, "in order to conduct a records check." The state argues that Kinney's statement to Leikem was not derived from an impermissible stop. But *Paredes* and *Ybarra* involved investigatory automobile stops. *Paredes*, 167 Ariz. at 610, 810 P.2d at 608 (police

9

conducted warrant check on defendant unable to produce driver license or proof of registration); *Ybarra*, 156 Ariz. at 275-76, 751 P.2d at 591-92 (police conducted warrant check on defendant after driver unable to produce registration). And the "records check" contemplated by these cases involved a determination of whether the defendant was the person he claimed to be, and whether there were any outstanding warrants for his arrest, not whether he had any prior convictions. *See Paredes*, 167 Ariz. at 611, 810 P.2d at 609; *Ybarra*, 156 Ariz. at 276, 751 P.2d at 592. Here, however, the officers had proof of Kinney's identity. Moreover, they did not conduct a "records check" to determine whether Kinney's identification was legitimate or whether there was an outstanding warrant for his arrest. Rather, they checked whether he had any prior felony convictions. Because this is not the kind of "records check" intended by the *Paredes* and *Ybarra* courts, their holdings are inapplicable here.

¶18 The state also attempts to justify Kinney's prolonged detention by claiming he never was arrested and instead merely was detained as "a reasonable safety measure under the circumstances." Although the officers initially detained Kinney because he appeared to be reaching for a weapon, they did not testify that they still had safety concerns once they determined that Kinney was not Balentine. Nor did they testify that safety concerns arose from any other activity at the house or truck. And, as we have explained above, police officers may only detain a person long enough to determine whether there is an outstanding warrant for the person's arrest. *See Teagle*, 217 Ariz. 17, ¶ 32, 170 P.3d at 275; *see also State v. Flores*, 195 Ariz. 199, ¶ 25, 986 P.2d 232, 238 (App. 1999) (investigatory stop "must not last longer than necessary to effectuate its

10

purpose"). Kinney's detention lasted much longer. We conclude his continued detention was illegal.

¶19 The state finally argues that even if Kinney's initial detention was illegal, the trial court did not err in admitting Kinney's statement at the police station because "the taint of the illegal arrest [or detention] had been purged by the time [Kinney] made his statement to" Leikem. "'Evidence may be sufficiently distinguishable to be purged of the primary taint [of a constitutional violation] if the causal connection between [the] illegal police conduct and the procurement of [the] evidence is so attenuated as to dissipate the taint of the illegal action.'" *State v. Hummons*, 225 Ariz. 254, ¶ 8, 236 P.3d 1201, 1204 (App. 2010), *quoting United States v. Green*, 111 F.3d 515, 521 (7th Cir. 1997) (alterations in *Hummons*). "In making such a determination, we consider '(1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct.'" *Id.*, *quoting Green*, 111 F.3d at 521.

¶20 Here, the record does not establish how much time had elapsed between Kinney's illegal detention and his subsequent questioning at the station. The record does show, however, that before admitting to Leikem that he had a prior conviction for bank robbery, Kinney already had made a similar statement when questioned after he was impermissibly detained. Because Kinney already had informed the officers of his prior conviction, it is unlikely he later would omit the information when being questioned about the same topic at the police station. *Cf. Missouri v. Seibert*, 542 U.S. 600, 613 (2004) ("Upon hearing [*Miranda*] warnings only in the aftermath of interrogation and just

11

after making a confession, a suspect would hardly think he had a genuine right to remain silent, let alone persist in so believing once the police began to lead him over the same ground again."). Moreover, the record does not establish there were any intervening circumstances that purged the taint of Kinney's initial illegal detention and interrogation. And, although the officers may have thought they were acting properly, based on the record presented, they violated well-established constitutional rules. We therefore conclude, as a matter of law, the taint of Kinney's original illegal detention was not purged by the time he made his statements at the police station.

¶21 The error that occurred in admitting Kinney's statements to Leikem violated Kinney's Fourth Amendment rights. *See* U.S. Const. amend. IV; *Wong Sun*, 371 U.S. at 484-86 (evidence obtained directly or indirectly by violation of Fourth Amendment not admissible against victim of illegal search or seizure). A violation of a defendant's Fourth Amendment rights can be fundamental error. *See State v. Christiansen*, 163 P.3d 1175, 1182-83 (Idaho 2007) (finding violation of Fourth Amendment rights fundamental error). *Cf. Henderson*, 210 Ariz. 561, ¶ 25, 115 P.3d at 608 (denial of procedural rights under the Fifth and Sixth Amendments was fundamental error). Although the error could be fundamental, Kinney also must show he was prejudiced such that a reasonable jury, reviewing the appropriate evidence, could have reached a different result. *See Henderson*, 210 Ariz. 561, ¶¶ 26-27, 115 P.3d at 608-09.

¶22 A defendant commits weapons misconduct if he knowingly possesses a "deadly weapon or prohibited weapon" and is a "prohibited possessor." A.R.S. § 13-3102(A)(4). A prohibited possessor is defined as someone who "has been convicted . . .

of a felony . . . and whose civil right to possess or carry a gun or firearm has not been restored." A.R.S. § 13-3101(A)(7)(b). Kinney does not dispute that his right to possess or carry a firearm has not been restored or that the crime of armed bank robbery is a felony. Thus, we need only determine whether a reasonable jury could have concluded that the state did not prove beyond a reasonable doubt that Kinney had a prior conviction.

¶23 Apart from Kinney's statement to Leikem admitting he had been convicted of armed bank robbery, the state also presented a document from federal court in Tucson showing that a person with Kinney's name and date of birth had been so convicted. Kinney claims that this document, standing alone, was insufficient evidence of his conviction.

¶24 In the context of determining the sufficiency of the evidence, Arizona courts have addressed the quantum of evidence that would be sufficient to establish a person's identity for purposes of showing the person had a prior conviction, but have not specifically addressed whether only a full name and date of birth is sufficient. *See, e.g.*, *State v. Pennye*, 102 Ariz. 207, 208, 427 P.2d 525, 526 (1967) ("mere identity of a name . . . is not sufficient evidence"); *State v. Baca*, 102 Ariz. 83, 87, 425 P.2d 108, 112 (1967) (name, detailed description, and prison photographs sufficient proof of prior felony); *State v. McCurdy*, 216 Ariz. 567, ¶ 15, 169 P.3d 931, 937 (App. 2007) (matching name, date of birth, and signature sufficient evidence of prior conviction); *State v. Cons*, 208 Ariz. 409, ¶ 17, 94 P.3d 609, 615 (App. 2004) (identification by name, date of birth, fingerprint, and recognition by trial judge "was overwhelming evidence"); *State v. Terrell*, 156 Ariz. 499, 503, 753 P.2d 189, 193 (App. 1988) (unusual name, presence

13

within Maricopa or Pinal County, and "comparable" description to that of previously convicted party insufficient to prove identity).

¶25 Other courts have concluded that a name and date of birth are sufficient evidence to prove identity, and some find a name alone to be prima facie evidence of identity. *See People v. Mendoza*, 228 Cal. Rptr. 308, 314 (Ct. App. 1986) (when considering prior convictions of an alleged repeat offender, "in the absence of countervailing evidence . . . [the] *identity of a person may be presumed, or inferred, from identity of name*"); *Keegan v. State*, 564 N.E.2d 533, 536 (Ind. Ct. App. 1990) (when considering prior conviction as element of crime, same name and date of birth sufficient when birth date obtained from defendant's driver license); *State v. Marlenee*, 259 N.W.2d 923, 925 (Neb. 1977) (for prior conviction as element of later crime, authenticated record with same name sufficient to establish identity where no denial or contradictory evidence); *State v. Cottrell*, 868 S.W.2d 673, 678 (Tenn. Crim. App. 1992) ("similarity of name constitutes *prima facie* evidence of identity"); *State v. Pirela*, 65 P.3d 307, 313 (Utah Ct. App. 2003) (for sentence enhancement, uncommon name, comparison of apparent age with birth date on prior, and fact that defendant did not dispute prior conviction while testifying sufficient). *But see People v. Cooper*, 104 P.3d 307, 312 (Colo. Ct. App. 2004) (for defendant convicted of being "habitual criminal," which significantly enhances sentence, same name and birth date insufficient "particularly because defendant's name is not unusual or distinctive").

¶26 We conclude that Kinney has failed to carry his burden to show prejudice. *See Henderson*, 210 Ariz. 561, ¶¶ 26-27, 115 P.3d at 608-09. Here, the state introduced

14

independent evidence of a prior Tucson area conviction that contained Kinney's name and birth date. In the absence of any evidence casting doubt on the identification, Kinney cannot show a reasonable jury would have reached any other conclusion. He therefore is not entitled to relief under a fundamental error review.

**Sufficiency of the Evidence**

¶27 Kinney finally argues that, "in the absence of evidence of his statements to detective Leikem, there was insufficient evidence to sustain a conviction for misconduct involving weapons." Our review is de novo. *State v. Bible*, 175 Ariz. 549, 595, 858 P.2d 1152, 1198 (1993). But we view the facts in the light most favorable to sustaining the verdict. *See id.*

¶28 This court reviews claims of insufficient evidence "only to determine whether substantial evidence supports the jury's verdict." *State v. Cox*, 217 Ariz. 353, ¶ 22, 174 P.3d 265, 269 (2007). "Substantial evidence has been described as 'more than a mere scintilla' of evidence; but it nonetheless must be evidence that 'reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt.'" *State v. Stroud*, 209 Ariz. 410, ¶ 6, 103 P.3d 912, 914 (2005), *quoting State v. Hughes*, 189 Ariz. 62, 73, 938 P.2d 457, 468 (1997). Substantial evidence "may be either circumstantial or direct." *State v. Henry*, 205 Ariz. 229, ¶ 11, 68 P.3d 455, 458 (App. 2003). We will reverse a conviction "only if 'there is a complete absence of probative facts to support [the jury's] conclusion.'" *State v. Carlisle*, 198 Ariz. 203, ¶ 11, 8 P.3d 391, 394 (App. 2000), *quoting State v. Mauro*, 159 Ariz. 186, 206, 766 P.2d 59, 79 (1988). We have concluded that no reasonable jury would have determined that the state

failed to prove its case beyond a reasonable doubt on this record.  That conclusion necessarily includes a determination that substantial evidence supports the verdict.

## Conclusion

¶29	Based on the foregoing, we affirm Kinney's conviction and sentence for weapons misconduct.

/s/ *Joseph W. Howard*
_____
JOSEPH W. HOWARD, Chief Judge

CONCURRING:

/s/ *J. William Brammer, Jr.*
_____
J. WILLIAM BRAMMER, JR., Presiding Judge

/s/ *Philip G. Espinosa*
_____
PHILIP G. ESPINOSA, Judge