NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

BENJAMIN PAUL ROMERO, *Appellant.*

Nos. 1 CA-CR 20-0248
1 CA-CR 20-0250
1 CA-CR 20-0251
(Consolidated)

FILED 03-09-2021

---

Appeal from the Superior Court in Yavapai County
Nos.  V1300CR201980418
V1300CR201980558
V1300CR201980341
The Honorable Christopher L. Kottke, Judge *Pro Tempore* (retired)

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey Ball
*Counsel for Appellee*

Law Offices of Stephen L. Duncan PLC, Scottsdale
By Stephen L. Duncan
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Lawrence F. Winthrop joined.

_____

**B A I L E Y**, Judge:

**¶1**           In these consolidated appeals, Benjamin Paul Romero challenges his convictions and sentences for third-degree burglary, possession of burglary tools, failure to appear, possession of a deadly weapon while being a prohibited possessor, and manufacturing, possessing, transporting, selling, or transferring a prohibited weapon. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**           Jerome police officers responded to an after-hours automated alert of an intruder in the Bartlett Hotel, a now-defunct property owned by the Jerome Historical Society. A motion-activated camera took multiple photographs of a person, later identified as Romero, in the immediate area of the hotel's wishing well, a tourist attraction into which visitors often toss coins, generating thousands of dollars for a typical year.

**¶3**           When the officers entered the building, they found Romero and his then-girlfriend Laina Galloway in the corner. Galloway was holding a brown bag, and there was a black backpack on the floor. Officers found a crowbar and some change in the backpack, and the brown bag contained more coins. Romero and Galloway had coins in their pockets. The hotel's wrought-iron security bars had been cut at the top and folded down, creating a hole large enough for a person to go through, and the damage looked recent. The officers arrested Romero and Galloway, and the State indicted Romero on one count of third-degree burglary, a Class 4 felony, and one count of possession of burglary tools, a Class 6 felony.

**¶4**           Romero entered a plea agreement on both counts, and sentencing was set for late July. He failed to appear for sentencing, however, and the court issued an arrest warrant.

**¶5**           A day later, Clarkdale Police began investigating a report that Romero was storing stolen items in a silver-colored trailer that he and Galloway had moved into earlier that month. Officers located Romero

down the street from the trailer. They executed a search warrant and found several firearms, including a sawed-off shotgun inside the trailer and a rifle just outside.

**¶6**      The State indicted Romero on two counts of possession of a deadly weapon while being a prohibited possessor, Class 4 felonies, and one count of manufacturing, possessing, transporting, selling, or transferring a prohibited weapon, a Class 4 felony.

**¶7**      At the trial on the weapons charges, [1] Galloway was expected to testify in the State's case, but she failed to appear. The trial court dismissed one of the weapons counts, and the jury found Romero guilty on the other two.

**¶8**      A second jury then found Romero guilty of failing to appear for sentencing in the initial case. The jury further found the aggravating circumstance that Romero committed the offense while on felony release.

**¶9**      After the State withdrew from Romero's plea agreement, a third jury found him guilty of third-degree burglary and possession of burglary tools. Romero stipulated to one aggravating circumstance—that he committed the offense for pecuniary gain—in exchange for the State dismissing the second aggravating circumstance—use of an accomplice.

**¶10**      In sentencing Romero on all of his convictions, the court found he had two historical prior felony convictions and sentenced him as a category-three repetitive offender to a slightly mitigated term of nine years for the burglary conviction, and it imposed equal or lesser concurrent sentences on the remaining counts.

**¶11**      We have jurisdiction over Romero's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A).

## DISCUSSION

**¶12**      Romero argues the prosecutor's opening statement was unsupported by the anticipated evidence, violating his right to Due Process. He also contends the court (1) admitted evidence without proper

---

[1] Romero was tried once before the misconduct-involving-weapons trial, but he was acquitted of the charges in the first trial.

foundation and (2) lacked sufficient evidence to sentence him as a repetitive offender.

I.      Standard of Review

**¶13**         Because Romero did not object to the alleged prosecutorial error[2] on the ground he now asserts, we review that argument for fundamental error. *See State v. Goudeau*, 239 Ariz. 421, 465, ¶ 192 (2016); *State v. Lopez*, 217 Ariz. 433, 434, ¶ 4 (App. 2008) ("[A]n objection on one ground does not preserve the issue on another ground."). We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *State v. Buccheri-Bianca*, 233 Ariz. 324, 328, ¶ 7 (App. 2013). A court's determination that a prior conviction is a historical prior felony conviction is a mixed question of law and fact, and we review de novo the trial court's legal conclusion and the sentence imposed. *State v. Rasul*, 216 Ariz. 491, 496, ¶ 20 (App. 2007); *State v. Johnson*, 210 Ariz. 438, 440, ¶ 8 (App. 2005).

II.     Whether the prosecutor committed error.

**¶14**         Romero argues the prosecutor committed error by mentioning Galloway in his opening statement at trial on the weapons charges. In the prosecutor's opening statement, he said:

> STATE:      In the beginning of July of 2019, Ben Romero and his then girlfriend, Laina Galloway, began moving to 9 Rincon in Clarkdale, Arizona, where there was a silver Kinsale trailer that was stationed on the property. This trailer was to be used as an art studio for Ms. Galloway and a place for Mr. Romero to stay.

Romero argues the prosecutor's comment was error because it turned out that Galloway did not testify that he lived in the trailer, where the weapons were found.

**¶15**         "To prevail on a claim of prosecutorial [error], a defendant must demonstrate that the prosecutor's misconduct so infected the trial

---

[2] Although Romero alleges prosecutorial misconduct, the conduct to which he referred is more properly characterized as prosecutorial error. *See Matter of Martinez*, 248 Ariz. 458, 470, ¶ 47 (2020) ("When reviewing the conduct of prosecutors in the context of 'prosecutorial misconduct' claims, courts should differentiate between 'error,' which may not necessarily imply a concurrent ethical rules violation, and 'misconduct,' which may suggest an ethical violation.").

with unfairness as to make the resulting conviction a denial of due process." *Goudeau*, 239 Ariz. at 465, ¶ 193 (quoting *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26 (1998) (internal quotation marks and citation omitted)). Romero must demonstrate the error was "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial." *See id.* (quoting *State v. Morris*, 215 Ariz. 324, 335, ¶ 46 (2007)).

**¶16** Romero has failed to carry his burden. Although an "opening statement should not contain any facts which the prosecutor cannot prove at trial," a prosecutor may refer to evidence in the opening statement if he has a good faith basis for believing the evidence exists and will be admissible. *State v. Bowie*, 119 Ariz. 336, 339 (1978). Here, the prosecutor told the jury that two witnesses would testify to Romero's "connection to the trailer." Despite the State's attempts to locate her, however, Galloway did not appear. She had testified against Romero in a previous trial, and the State had been unable to personally serve her, a subpoena was left with her mother. The defense had also attempted to serve her with a subpoena. Accordingly, the prosecutor had a good-faith expectation at the time of his opening statement that Galloway would testify. The prosecutor did not learn until later in the trial that Galloway had been arrested and detained in California. More importantly, another witness testified based on personal knowledge that Romero stayed at the trailer; accordingly, Romero cannot show the alleged error "permeated the entire atmosphere of the trial."

III.   Whether the trial court erred at sentencing by admitting evidence without the proper foundation.

**¶17** Romero argues the trial court erred by admitting certified minute entries through the foundational testimony of a police officer who did not create them. Romero's argument fails. The certified minute entries, however, were self-authenticating and required no extrinsic evidence of authenticity. Ariz. R. Evid. 902; *see State v. Cons*, 208 Ariz. 409, 416, ¶ 18 (App. 2004) ("[C]ertified copies of the court records are proper, self-authenticated documents that are properly offered in support of an allegation of prior convictions.").

IV.   Whether the State offered sufficient evidence to prove Romero's prior convictions.

**¶18** Romero argues the State did not prove he was the person to whom the prior-conviction documents referred.

**¶19**    "[P]rior convictions for sentence enhancement purposes must be established by clear and convincing evidence." *Cons*, 208 Ariz. at 415, ¶ 15. "In order to prove a prior conviction, the state must submit positive identification establishing that the accused is the same person who previously was convicted, as well as evidence of the conviction itself." *Id.* at ¶ 16. One way to establish a prior conviction is to offer a certified copy of the judgment of conviction and, separately, establish that the defendant is the person to whom the document refers. *Id.*

**¶20**    Initially, we note that the certified copies of conviction judgments are not part of our record on appeal. Romero bears the burden of ensuring the record on appeal is complete, *see State v. Zuck*, 134 Ariz. 509, 512-13 (1982), and "[w]hen the record is not complete, we must assume that any evidence not available on appeal supports the trial court's actions," *State v. Lavers*, 168 Ariz. 376, 399 (1991).

**¶21**    According to the sentencing transcript, the documents listed Romero's full name and birthdate, and Romero admitted to many of the convictions in documents attached to the presentence reports. The evidence, therefore, was sufficient to prove Romero's prior convictions "[i]n the absence of any evidence casting doubt on the identification." *See State v. Kinney*, 225 Ariz. 550, 558, ¶ 26 (App. 2010). Romero points to no evidence in the record that "cast[] doubt on the identification." *Id.*

**¶22**    Finally, our review of the record demonstrates sufficient evidence to support the court's finding of Romero's historical prior convictions; as such, his argument that the court improperly sentenced him as a repetitive offender fails.

## CONCLUSION

**¶23**    For the foregoing reasons, we affirm Romero's convictions and sentences.

