NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ELY ALFREDO ALEMAN, *Appellant.*

No. 1 CA-CR 24-0589

FILED 08-12-2025

Appeal from the Superior Court in Maricopa County
No. CR 2023-006368-002
The Honorable Daniel G. Martin, Judge

**AFFIRMED**

COUNSEL

Law Office of Nicole Countryman, Phoenix
By Nicole Countryman
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Casey D. Ball
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

---

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

**¶1**　　　　The defendant, Ely Alfredo Aleman, appeals his convictions and sentences for one count of aggravated assault, one count of assisting a criminal street gang, and two counts of threatening or intimidating. We affirm Aleman's convictions and sentences because he fails to show the court abused its discretion by denying his motion to strike a juror for cause or his motion for a mistrial.

### FACTS[1] AND PROCEDURAL BACKGROUND

**¶2**　　　　In 2022, four friends rode their motorcycles home from dinner on Bethany Home Road in Glendale. When they tried to turn right onto Grand Avenue, they encountered another group of motorcyclists obstructing the roadway and preventing them from making the turn. Unbeknownst to the friends, the other motorcyclists were part of the Vagos motorcycle gang. One of the friends, Don (a pseudonym), waved at the Vagos gang before asking if there was an issue and stating they were trying to get home. An argument then ensued between Don and the gang.

**¶3**　　　　Aleman, a documented member of the Vagos gang, pushed Don off his bike. The other friends tried to intervene, but the gang prevented them from doing so. Don lay on the ground getting hit by several people, including Aleman. Eventually, the friends walked away, but Don stood and knocked down a Vagos's bike. The gang once again began hitting and punching Don. The fight ended with a member of the Vagos gang knocking over Don and his friends' bikes.

**¶4**　　　　One of Don's friends captured the incident with her camera, and she sent the video to the Glendale Police Department. Law enforcement officers throughout the state identified the Vagos gang members, including

---

[1]　　　We view the facts in the light most favorable to affirming. *State v. Mendoza*, 248 Ariz. 6, 11, n.1 (App. 2019).

Aleman, by examining stills from the video and comparing the patches on the individuals' vests, as well as their helmets and facial features, to known photos.

¶5        At the trial, during jury selection, the court asked potential jurors, "[i]s there anyone here who would be likely to believe a police officer either more or less just based on the fact that they are a police officer?" Juror 15[2] told the court that she wanted to believe she could be fair and impartial, but her husband had worked for the sheriff's office, and her son-in-law was killed while working as a police officer. Aleman's counsel questioned Juror 15 about her comments.

> [Defense Counsel]: So your husband was a member of the Sheriff's Department?
>
> [Juror 15]: Yes, he was.
>
> [Defense Counsel]: And I think you said that you would give more weight towards police officers because of that?
>
> [Juror 15]: No, I didn't say I would give more weight. I would hope I could be -- I'm pretty sure I could be impartial with -- I wouldn't -- I would go by what I hear and stuff. I wouldn't judge anything by that. . . .
>
> . . .
>
> [Defense Counsel]: And I appreciate that. It's also -- there was a death in your family?
>
> [Juror 15]: There was. My son-in-law was a police officer, and he was killed in the line of duty. And do I say that it was a gang member issue? But I would not judge it on that. . . .
>
> [Defense Counsel]: You didn't tell me it was a gang member issue before.
>
> [Juror 15]: I didn't, because, actually, just sitting here listening to the -- I mean, that's why I said it now.

---

2        Juror 15 was originally labeled Juror 58. After she was selected as a juror, she was relabeled Juror 15.

[Defense Counsel]: And I appreciate that.

[Juror 15]: But I wouldn't be *impartial* [emphasis added] in the sense of my decision. I would listen to the evidence. That wouldn't affect it.

[Defense Counsel]: You sure? Because this is -- I mean, it's a traumatic situation --

[Juror 15]: I know. I mean, I think I would be, yes.

[Defense Counsel]: Okay. Thank you.

¶6 Aleman moved to strike Juror 15 for cause. While he acknowledged that Juror 15 said she would try to be fair and impartial, he feared that as more information came out, her history would affect her. The court denied the motion because "there has not been a sufficient showing that she is unable to serve fairly and impartially to both sides of this case."

¶7 As part of its case-in-chief, the State called a detective who identified Aleman as one of the Vagos gang members in the video. Midway through the cross-examination, the court allowed the parties to question the detective outside the jurors' presence about his previous contacts with Aleman. After some discussion, the court ordered the detective not to refer to any other clubs or groups to which Aleman may have belonged.

¶8 Before the jury, Aleman asked the detective about his ability to identify Aleman's tattoos. Aleman asked the detective if he could see Aleman's tattoos clearly during prior contact, when they were standing 20 to 40 yards apart. The detective responded:

> I've seen Mr. Aleman's tattoos on several different occasions, and it wasn't, like, visually 20, 40 yards away, usually. It was his prior contacts with police, his booking photos, stuff like that.

¶9 Aleman moved for a mistrial, arguing that the detective's statement prejudiced him by mentioning his prior contacts with law enforcement. The court denied Aleman's motion but offered to give the jury a limiting instruction, which Aleman refused.

¶10 The jury convicted Aleman of the charges, and the court sentenced him to four concurrent aggravated terms, totaling 13.5 years in

prison. Aleman appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") §§ 12-120.21, 13-4031, and 13-4033(A)(1).

**DISCUSSION**

## A. The Court Did Not Abuse Its Discretion by Finding Juror 15 Could Be Fair and Impartial.

¶11 Aleman contends that the superior court denied him due process by denying his motion to strike Juror 15 for cause. We review a trial court's denial of a motion to strike a potential juror for an abuse of discretion. *State v. Allen*, 253 Ariz. 306, 330, ¶ 41 (2022). The court must dismiss jurors for cause if it finds "a reasonable ground to believe that the . . . jurors cannot render a fair and impartial verdict." Ariz. R. Crim. P. 18.4(b). But a court "need not strike a juror for cause simply because she was the victim of a crime similar to one with which the defendant is charged." *State v. Puga*, ___ Ariz. ___, ___, ¶ 27, 564 P.3d 631, 636 (App. 2025) (quotation omitted) (cleaned up).

¶12 During voir dire, Aleman twice acknowledged that Juror 15 "said that she could be . . . fair and impartial," but stated he feared that "as more information comes out[,] her history may affect her." But on appeal, Aleman argues "[o]n two occasions [Juror 15] said she would *not* be impartial." (emphasis added). "To preserve an argument for review, the defendant must make a sufficient argument . . . . And an objection on one ground does not preserve the issue [for appeal] on another ground." *State v. Kinney*, 225 Ariz. 550, 554, ¶ 7 (App. 2010) (alteration in original) (quotation omitted). A "fundamental rule of appellate procedure in Arizona" presumes that "the trial court must be given an opportunity to correct the errors at trial," and when no opportunity is given, the claim is waived. *State v. Totress*, 107 Ariz. 18, 20 (1971).

¶13 We disagree with the State that Aleman has forfeited his right to seek relief for all but "fundamental, prejudicial error" over the argument that Juror 15 made contradictory statements, suggesting she could not be impartial. *Kinney*, 225 Ariz. at 555, ¶ 11. Aleman's trial argument was enough to allow the superior court to evaluate Juror 15's demeanor and responses and to determine, based on all the evidence, if she could be fair and impartial. We believe that the trial court had the chance to correct the claimed error, so we review the claim for an abuse of discretion. *Allen*, 253 Ariz. at 330, ¶ 41.

¶14 Aleman argues the jury was not impartial because Juror 15 made contradictory statements, including "[w]ell, I want to feel I can be not

impartial, but my husband was with the sheriff's department." Aleman tries to characterize these portions of Juror 15's statements as contradictory, but the record shows that neither the parties nor the superior court perceived the statements that way during jury selection. After informing Aleman that her son-in-law was a police officer who was killed in the line of duty on a "gang member issue," Juror 15 said, "I wouldn't be impartial in the sense of my decision. I would listen to the evidence. That wouldn't affect it."

¶15 A court must "consider the totality of a prospective juror's conduct and answers given during voir dire" in assessing a challenge for cause. Ariz. R. Crim. P. 18.5(h). And a prospective juror need not make her assurances of impartiality in absolute terms. *State v. Acuna Valenzuela*, 245 Ariz. 197, 210, ¶ 32 (2018); *see also State v. Bible*, 175 Ariz. 549, 573 (1993) (The court's refusal to strike jurors who believed it would be difficult but not impossible for them to be impartial was not error.), *abrogation on other grounds recognized by McKinney v. Ryan*, 813 F.3d 798, 815 (9th Cir. 2015). Juror 15's full statements during voir dire revealed that she felt she could be fair and impartial, despite her personal experiences: "I'm pretty sure I could be impartial . . . I would go by what I hear . . . ."

¶16 Taken in context, the record reflects that Juror 15 misused the word "impartial" when she said she would not be impartial. Defense counsel immediately responded "[y]ou sure? . . . I mean it's a traumatic situation." And later, when making the motion to strike Juror 15, Aleman acknowledged that Juror 15 said she would try to be fair and impartial. The court interpreted Juror 15's comments the same way: "[Juror 15] indicated her ability to be impartial." *See State v. Colorado*, 256 Ariz. 97, 99, 102, ¶¶ 16, 23 (App. 2023) (The superior court determines the juror's credibility about assurances of impartiality, and we defer to those findings unless unsupported by the record.). The court did not err by denying Aleman's motion to strike.

**B. The Court Did Not Abuse Its Discretion by Denying Aleman's Motion for Mistrial.**

¶17 Aleman argues the superior court erred by denying his motion for a mistrial after the detective testified about Aleman's prior police contacts. Mistrials are "the most dramatic remedy for trial error," and the court should only grant a party's request for a mistrial if "the interests of justice will be thwarted otherwise." *State v. Miller*, 234 Ariz. 31, 40, ¶ 25 (2013) (quotation omitted).

¶18      In granting a motion for a mistrial based on witness testimony, the superior court must consider two factors: "(1) whether the testimony called to the jurors' attention matters that they would not be justified in considering in reaching their verdict and (2) the probability under the circumstances of the case that the testimony influenced the jurors." *State v. Lamar*, 205 Ariz. 431, 439, ¶ 40 (2003). This inquiry focuses on whether the contested testimony would deny the defendant a fair trial. *State v. Bailey*, 160 Ariz. 277, 279 (1989).

¶19      We review the admission of evidence under an abuse of discretion standard. *See State v. Gulbrandson,* 184 Ariz. 46, 60 (1995). Evidence of other acts is admissible if it is relevant and "admitted for a proper purpose." *Id*. Evidence is relevant if it tends to make a material fact more or less probable than it would be without the evidence. *See* Ariz. R. Evid. 401. Although evidence of other acts may not be used to prove a defendant's propensity to commit crimes, it is admissible when used to prove the defendant's "identity." Ariz. R. Evid. 404(b); *State v. Van Adams*, 194 Ariz. 408, 415, ¶ 20, (1999).

¶20      Here, a central issue in the case was whether Aleman was involved in the gang assault. His identity, and how law enforcement arrived at that conclusion, was key to the State's case. How the detective determined the tattoos on the assailant in the crime video matched known tattoos on Aleman was material to the jurors' determination of identity.

¶21      The detective's "booking photos" statement was made in response to Aleman questioning the detective's ability to recognize Aleman's tattoos from prior contact when the detective was standing 20 to 40 yards away. The response was relevant to the question asked because the detective's ability to recognize the tattoos was not based solely on seeing the defendant from 20 to 40 yards away on a prior occasion. Unfortunately, the detective did not limit his answer to "known photos" of Aleman, thus introducing the fact that Aleman had previous contacts with the police. That an individual has had prior police contact for "another crime entirely distinct and independent of that for which he is on trial, even though it be a crime of the same class, is neither relevant nor admissible." *State v. Finn*, 111 Ariz. 271, 278 (1974) (quotation omitted), *abrogated on other grounds by, State v. Bush*, 244 Ariz. 575, 589-90, ¶¶ 59-61 (2018).

¶22      Thus, the statement referring to how the detective arrived at his conclusion about identity contained both admissible and inadmissible components. If evidence is admissible against a party for one purpose but not for other purposes, "the court, on timely request, must restrict the

evidence to its proper scope and instruct the jury accordingly." Ariz. R. Evid. 105; *see also State v. Maxwell*, 95 Ariz. 396, 400 (1964) (A defendant's failure to request a "limiting instruction constituted a waiver of any right to have such given," and the failure to instruct is not error.); *State v. McFarlin*, 110 Ariz. 225, 228 (1973) (An alleged error about the limited purpose of evidence cannot be raised "absent a request by counsel for such an instruction."), *superseded by rule on other grounds*, *State v. Aguilar*, 209 Ariz. 40, 47, ¶ 24 (2004).

**¶23**    Here, the superior court offered to give a limiting instruction to the jury, which Aleman refused to accept. While Aleman's decision may have been strategic, it does not support the argument that the court abused its discretion by denying a mistrial. *See State v. Herrera*, 203 Ariz. 131, 134-35, ¶ 6 (App. 2002) (Refusing curative instructions weighs against finding an abuse of discretion when the court denied a mistrial.); *Miller*, 234 Ariz. at 40, ¶¶ 24, 26 (No abuse of discretion in the denial of a mistrial in part because the court gave a curative instruction.); *State v. Adamson*, 136 Ariz. 250, 262 (1983) (Whether "some remedy short of mistrial will cure the error" is a discretionary determination for the superior court.). On this record, including the fact that Aleman refused a curative instruction, his argument about the jury improperly considering the evidence fails.

**¶24**    Aleman's argument also fails because he does not demonstrate a reasonable probability that the verdict would have been different had the testimony not been admitted. *See State v. Grijalva*, 137 Ariz. 10, 14 (App. 1983)*, superseded by statute on other grounds as recognized in State v. Cons*, 208 Ariz. 409, 413, ¶ 9 (App. 2004). The detective's statements referenced only Aleman's prior contact with police, not convictions. The detective said he recognized Aleman from several different contacts, including "prior contacts with police, his booking photos, stuff like that." The detective referenced the photos to explain how he could identify Aleman and not to "prove [Aleman's] character . . . to show action in conformity therewith." Ariz. R. Evid. 404(b).

**¶25**    Aleman fails to show a reasonable probability that the detective's statements influenced the jury and thus fails to show that the superior court erred by denying his motion for mistrial.

**CONCLUSION**

¶26        We affirm Aleman's convictions and sentences.

