IN THE

# ARIZONA COURT OF APPEALS
## DIVISION TWO

---

OSCAR F.,
*Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, E.F., M.F., C.F., G.F., AND L.F.,
*Appellees*.

No. 2 CA-JV 2014-0008
Filed July 30, 2014

---

Appeal from the Superior Court in Pima County
No. J203687
The Honorable Susan A. Kettlewell, Judge Pro Tempore

**AFFIRMED**

---

COUNSEL

Emily Danies, Tucson
*Counsel for Appellant*

Thomas C. Horne, Arizona Attorney General
By Erika Z. Alfred, Assistant Attorney General, Tucson
*Counsel for Appellee Department of Child Safety*

---

**OPINION**

Judge Vásquez authored the opinion of the Court, in which
Presiding Judge Kelly and Judge Howard concurred.

---

V Á S Q U E Z, Judge:

¶1 Oscar F. appeals from the juvenile court's order finding his five children, E.F., M.F., C.F., G.F., and L.F., dependent as to him.[1] We affirm the court's dependency order for the following reasons.

**Factual and Procedural Background**

¶2 When Oscar and the children's mother, J.S., divorced in February 2011, they were awarded joint legal custody of the children, as well as equal parenting time. According to a Department of Child Safety (DCS) report,[2] the domestic relations court had nonetheless noted "evidence that the children were mistreated, abused, and neglected while in [Oscar's] care." In late 2011, DCS received a report that C.F., then eight, had twice become hysterical at school on days he was scheduled to go to Oscar's house at the end of the day; C.F. had said that he was afraid of Oscar, that Oscar "hurts him . . . all the time," and that Oscar had, in the past, "pushed him against the wall and dropped him on his head."

¶3 The investigation of these incidents was still open when, in February 2013, one of C.F.'s siblings told J.S. that, during a recent visit, Oscar had picked C.F. up to "chest level" and thrown

---

[1]The children range in age from six to fifteen years old.

[2]The report was prepared by an employee of Child Protective Services (CPS), formerly a division of the Arizona Department of Economic Security (ADES). Effective May 29, 2014, the Arizona legislature repealed the statutory authorization for CPS and for ADES's administration of child welfare and placement services under title 8 and transferred powers, duties, and purposes previously assigned to those entities to the newly established Department of Child Safety (DCS). *See* 2014 Ariz. Sess. Laws 2d Spec. Sess., ch. 1, §§ 6, 20, 54. Accordingly, DCS has been substituted for ADES in this matter. *See* Ariz. R. Civ. App. P. 27. For simplicity, our references to DCS in this decision encompass both ADES and the former CPS.

him to the floor, causing him to hit his head hard on the ground. When J.S. later took C.F. to the hospital, he was diagnosed with a concussion, headache, and emotional distress. In individual interviews with the Southern Arizona Children's Advocacy Center (CAC), C.F., G.F., and L.F. reported that Oscar had thrown C.F. to the ground, said that they felt unsafe with Oscar because he was "mean," and reported other instances of physical abuse.

¶4 DCS took the children into temporary custody, placed them with J.S., and filed a dependency petition in which it alleged that Oscar had physically abused C.F. and that J.S. had failed to protect the children from Oscar's abuse. In amended dependency petitions, DCS further alleged that J.S. had "engage[d] in acts of verbal domestic violence" against the children and that Oscar had emotionally abused C.F. After a facilitated settlement conference, J.S. agreed to participate in in-home intervention services, but Oscar elected to proceed directly to a dependency adjudication hearing.

¶5 After a dependency adjudication hearing that spanned several days, the juvenile court found DCS had proven its allegations against Oscar by a preponderance of the evidence and adjudicated the children dependent as to him. [3] This appeal followed.

## Discussion

¶6 "On review of an adjudication of dependency, we view the evidence in the light most favorable to sustaining the juvenile court's findings. We generally will not disturb a dependency adjudication unless no reasonable evidence supports it." *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, ¶ 21, 119 P.3d 1034, 1038 (App. 2005) (internal citation omitted). But we review de novo legal issues involving the juvenile court's interpretation of a statute or procedural rule. *Bobby G. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 506,

---

[3]The juvenile court found the allegation of a current "criminal investigation pending against [Oscar]" had not been proven, but found "the remainder of the allegation" that Oscar had physically abused C.F. was established by a preponderance of the evidence.

¶ 1, 200 P.3d 1003, 1005 (App. 2008); *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, ¶ 18, 181 P.3d 1126, 1131 (App. 2008).

**¶7**      Oscar first argues the juvenile court erred as a matter of law in concluding it could adjudicate the children dependent as to him "when the other parent"—J.S.—"had voluntarily agreed to services in the home without an adjudication of dependency." According to Oscar, although the dependency petition, as to J.S., "remains un-adjudicated and stayed, [DCS] is NOT the legal guardian of the children." He argues the court erred because J.S. "is exercising care and control over the children" in an in-home placement and, therefore, "the children cannot be dependent" under the statutory definition.

**¶8**      A dependent child is defined, in relevant part, as one who is "[i]n need of proper and effective parental care and control and who has . . . no parent or guardian willing to exercise or capable of exercising such care and control," A.R.S. § 8-201(14)(a)(i), or one "whose home is unfit by reason of abuse, neglect, cruelty or depravity by a parent, a guardian or any other person having custody or care of the child," § 8-201(14)(a)(iii). After a dependency petition has been filed, a juvenile court "may order in-home intervention" for a child who has not been removed from the home upon finding that, although a "parent, guardian or custodian is unable to provide proper care, control and supervision of the child," "[i]n-home intervention appears likely to resolve [those] risk issues" and "[t]he parent, guardian or custodian agrees to a case plan and participation in services" to accomplish that end. A.R.S. § 8-891(A). An in-home intervention "shall not exceed one year without review and approval by the court." § 8-891(C).

**¶9**      Throughout the duration of an in-home intervention period, the dependency petition remains pending, and "[i]f the parent, guardian or custodian violates the in-home intervention order, the court may take whatever steps it deems necessary to obtain compliance or may rescind the order and set the dependency adjudication hearing" on the petition. A.R.S. § 8-892. But "if the specific time for completion of the in-home intervention has expired without being extended by the court and a dependency adjudication

hearing has not been set as provided in § 8-892," the dependency petition will be dismissed. § 8-891(C).

¶10        Oscar therefore is mistaken that the children's in-home placement with J.S. means they cannot be dependent. Since the day after the dependency petition was filed, the children have been "temporary wards of the Court, committed to the legal care, custody and control of . . . [DCS] and placed in the physical custody" of J.S. The children's placement with J.S., subject to in-home intervention and DCS supervision, does not alter the allegations in the petition or somehow constitute a finding that J.S. is willing and able to exercise proper and effective parental care and control, as Oscar seems to suggest.

¶11        To the contrary, the allegations with respect to J.S. have simply been held in abeyance in accordance with § 8-891. In agreeing to participate in an in-home intervention, J.S. was required to acquiesce in the juvenile court's determination that, without such intervention, she was unable to provide proper care, control, and supervision of the children, *see* § 8-891(A)(3), (4)(b); but the statute permits her to do so while continuing to contest the petition's allegations, *see* § 8-892. We conclude this circumstance is encompassed by the court's authority, pursuant to A.R.S. § 8-844(D), to adjudicate children dependent as to one parent, notwithstanding unresolved and contested dependency allegations with respect to the other.[4] The court did not err in adjudicating the children

---

[4] With respect to a juvenile court's authority to adjudicate children dependent as to one parent, without addressing dependency allegations against the other, § 8-844(D) provides as follows:

> The court may adjudicate a child dependent as to one parent or guardian and proceed with a disposition, review or permanency hearing or any other hearing as to that particular parent or guardian notwithstanding another parent's or guardian's request to contest the

dependent as to Oscar while allegations against J.S. remained pending.[5]

**¶12**     Oscar next argues the evidence was insufficient to support the juvenile court's findings, by a preponderance of the evidence, that he had physically and emotionally abused C.F.  He maintains "the only assertions of physical abuse . . . to any medical personnel" were made by J.S., "with no corroboration by C.F."  He also challenges the credibility of the psychologist who examined C.F. and concluded C.F. was a victim of emotional abuse who suffered "ongoing emotional trauma, likely [caused] by both parents."  But the court also relied on video records of the children's interviews, which corroborated reports of the abuse, and it expressly found "no indication that the children were coached to make statements detrimental to [Oscar]," contrary to Oscar's assertions at the hearing.

**¶13**     The juvenile court, as the trier of fact, "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts."  *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, ¶ 4, 100 P.3d 943, 945 (App. 2004).  We do not reweigh the evidence on review, *id.* ¶ 14, and we make no exception here.

**Disposition**

**¶14**     The juvenile court was authorized by statute to adjudicate the children dependent as to Oscar, notwithstanding

---

allegations in the petition or that another parent or guardian has not been served.

[5] Because we conclude the juvenile court acted within its authority, pursuant to § 8-844(D), we need not consider DCS's argument, in the alternative, that the children could be adjudicated dependent as to Oscar alone because their "home"—if understood to mean the home they shared intermittently with Oscar as part of a joint custody order—"is unfit by reason of abuse, neglect, cruelty or depravity by a parent . . . ."  § 8-201(14)(a)(iii).

unresolved dependency allegations against the children's mother, J.S., who was participating in an in-home intervention at the time of the adjudication. The court's ruling is supported by reasonable evidence in the record. Accordingly, we affirm the court's order adjudicating E.F., M.F., C.F., G.F., and L.F. dependent as to Oscar.