NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MICHAEL T., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, N.T., *Appellees*.

No. 1 CA-JV 14-0177
FILED 11-25-2014

Appeal from the Superior Court in Maricopa County
No. JD527230
The Honorable Robert C. Houser, Judge Pro Tem
The Honorable Janice Crawford, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Erika Z. Alfred
*Counsel for Appellees*

_____

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Judge Maurice Portley joined.

_____

**H O W E,** Judge:

¶1         Michael T. ("Father") appeals the determination that his son, N.T., was a dependent child. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2         Father and Kristina T. ("Mother"), the biological parents of N.T., born in May 2007, smoked marijuana. Mother and N.T. tested positive for marijuana at the child's birth. The couple continued to smoke marijuana together. On one occasion, they smoked on Mother's porch while N.T. was "probably" in the house. N.T. told other people that he had seen his parents smoke "pot," meaning marijuana.

¶3         The parents ended their relationship in 2010, but Father continued to see Mother and N.T., including caring for N.T. overnight and dropping the child off at Mother's place during the day. In 2012, Father noticed that Mother was "up and down on dope," meaning methamphetamines, and "running around in the wrong crowd." It was "obvious" to Father that Mother was using methamphetamine, but he continued to leave N.T. in Mother's care. Although Father discussed Mother's drug use with his adult daughter, he did not follow up after his daughter allegedly called CPS to no avail.

¶4         Father had started using marijuana when he was 15 years old, used marijuana two or three times a day, and "might sneak a couple of hits at lunch and in the evening." He obtained a medical marijuana card in January 2014. Father also drank to "numb his pain" from work, but tried "to keep it under a six pack," even though he was convicted in 2006 for misdemeanor driving under the influence.

¶5 In December 2013, the Arizona Department of Economic Security ("the Department")[1] received a report that (1) Mother was neglecting N.T. because she was using methamphetamine and leaving N.T. in the care of his grandmother, who abused prescription pain medication; (2) the home was infested with bed bugs; and (3) N.T. had easy access to a dangerous backyard and pool. When an investigator responded, Mother appeared to be under the influence of drugs, N.T.'s grandmother was under the influence of pain medication, and the backyard pool was green and unfenced.

¶6 The Department took temporary protective custody of N.T. and placed him in the care of his adult half-sister. Father then tested positive for marijuana and told the Department that he drank often because it was the only way to relieve his physical pain. Because Father had never tried any substance abuse treatment, the Department recommended that Father attend a substance abuse treatment program at TERROS, a healthcare organization. The following month, TERROS recommended that Father be placed in a standard outpatient treatment to "evaluat[e] [his] medical marijuana levels and to evaluate [his] alcohol behaviors," as well as "to evaluate his using behaviors and how it may affect parenting."

¶7 The Department subsequently filed a dependency petition alleging that N.T. was dependent as to both his parents. The petition contends that Father was unable to parent due to neglect and failure to protect. Specifically, it alleged that "Father reported that he is frequently at Mother's home, but failed to protect the child against the dangers in the backyard" and that he "admitted that he suspected that Mother was abusing drugs, but did not take the necessary actions to protect the child from Mother's substance abuse." The Department later amended its pleadings to conform to the evidence and added an allegation of substance abuse by Father.

¶8 After a contested hearing, the juvenile court adjudicated N.T. dependent because Father failed to protect N.T. from Mother's substance abuse and his own substance abuse affected his ability to parent and protect N.T. The court also found that out-of-home care was necessary to protect

---

[1] After Father filed this appeal, the Arizona legislature eliminated the Child Protective Services and in its place created the Department of Child Safety, an entity independent of the Arizona Department of Economic Security. *See* S.B. 1001, 51st Leg., 2d Spec. Sess. (Ariz. 2014). To maintain consistency with the juvenile court records, this Court will refer to the parties as they existed at the time of the proceedings.

N.T.'s welfare and that his current placement with his adult half-sister was the least restrictive placement consistent with his needs.

¶9        Father timely appealed. He also moved for return of N.T. and requested an in-home dependency. But the juvenile court vacated the scheduled hearing when Father did not appear.

## DISCUSSION

¶10        Father argues that the juvenile court erred in finding N.T. dependent because the Department failed to prove by a preponderance of the evidence that the child was dependent. On review, we view the evidence in the light most favorable to sustaining the juvenile court's findings. *Oscar F. v. Ariz. Dep't of Child Safety*, 235 Ariz. 266, 267–68 ¶ 6, 330 P.3d 1023, 1024–25 (App. 2014). But we review de novo the court's interpretation and application of the dependency statute. *Id.*

¶11        Before a child can be found dependent, the Department must prove by a preponderance of the evidence one of the grounds for a finding of dependency in A.R.S. § 8–201(14)(a).Under this statute a dependent child is one "[i]n need of proper and effective parental care and control and who has . . . no parent or guardian willing to exercise or capable of exercising such care and control," or whose "home is unfit by reason of abuse, neglect, cruelty or depravity by a parent, a guardian or any other person having custody or care of the child." A.R.S. § 8–201(14)(a)(i), (iii). Neglect includes the "inability or unwillingness of a parent, guardian or custodian of a child to provide that child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare." A.R.S. § 8–201(24)(a). The primary consideration in a dependency case is the child's best interest. *Michael M. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 230, 234 ¶ 17, 172 P.3d 418, 422 (App. 2007).

¶12        In the present case, the evidence supports the court's dependency determination. Father testified that he knew that both Mother and N.T. tested positive for marijuana when N.T. was born. He also testified that he had concerns regarding Mother's substance abuse for several years, stating that she was "running around with the wrong crowd" and was "up and down on dope." However, Father did not remove or protect N.T. from her care, despite his concerns of her drug use. Instead, he continued to smoke marijuana with her; he never sought treatment for his drug abuse and used alcohol to numb his pain; and their child was aware of their drug use. The record provides sufficient evidence to support the juvenile court's finding that Father failed to protect N.T. from Mother's substance abuse, as

well as the finding that Father's history of abusing marijuana and alcohol affected his ability to parent and protect N.T. Consequently, the juvenile court did not err in adjudicating N.T. dependent with respect to Father.

¶13 Father argues in the alternative that the juvenile court abused its discretion in ordering an out-of-home dependency. First, the record supports the child's removal and continued placement until Father addressed the problems and issues revealed during the investigation and dependency process. Second, although Father asked the court to consider an in-home dependency, he did not appear at the evidentiary hearing. By failing to appear, Father has failed to preserve—and therefore has forfeited—the argument on appeal. *See Motzer v. Escalante*, 228 Ariz. 295, 298 ¶ 16, 265 P.3d 1094, 1097 (App. 2011) ("[A]rguments not made at the trial court cannot be asserted on appeal."); *State v. Kinney*, 225 Ariz. 550, 554 ¶ 7, 241 P.3d 914, 918 (App. 2010) ("To preserve an argument for review, the defendant must make a sufficient argument to allow a trial court to rule on the issue.").

## CONCLUSION

¶14 For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh