NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LENORE S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, S.H., *Appellees*.

No. 1 CA-JV 15-0347
FILED 4-26-2016

Appeal from the Superior Court in Maricopa County
No. JD28323
The Honorable Shellie F. Smith, Judge *Pro Tem*

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellees*

---

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Peter B. Swann joined.

---

**H O W E**, Judge:

¶1        Lenore S. ("Grandmother") appeals the determination that her granddaughter, S.H., is a dependent child. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        In November 2014, Stacy H. ("Mother") gave birth to S.H. in a Nevada hospital. Grandmother told a hospital staff member that Mother already had a baby in the care of the Arizona Department of Child Safety ("Department"); the staff member called Nevada Child Protective Services ("Nevada CPS"). A Nevada CPS case manager went to the hospital, and Grandmother told the individual that Mother could not care for the baby. With Mother's permission, Grandmother obtained guardianship of S.H. Two weeks later, Mother disappeared.

¶3        In April 2015, Grandmother returned to Arizona to visit family, bringing five-month-old S.H. and two of her minor children with her. But within a day of their arrival, Grandmother received a call that she had an eviction notice for her apartment in Las Vegas. Grandmother left the children with her family, including her ex-husband ("Grandfather") and her mother ("Great Grandmother"). Grandmother told them that she would be back in a few days and then took a bus to Las Vegas.

¶4        Once Grandmother arrived in Nevada, she received a call from her 19-year-old son, telling her that she needed to return to Arizona immediately because the Department had taken S.H. On the day Grandmother left for Nevada, Grandfather, who worked as a security guard at a nightclub, had to go to work. Grandfather called Prince Z. ("alleged Father") to watch the baby.[1] While S.H. was in the alleged Father's

---

[1]        Prince Z. subsequently took a paternity test and was determined not to be S.H.'s father, and the juvenile court dismissed him from the case. The court later adjudicated S.H. dependent from John Doe, an unknown father.

care that night, the alleged Father fell asleep at the wheel and was ultimately arrested for driving while under the influence with a blood alcohol concentration ("BAC") level of 0.124 and on a suspended license. The next day, the Department responded to the listed address it had on file for the alleged Father and found S.H. with her uncle, Grandmother's 19-year-old son. The alleged Father was on his way to the motel to visit S.H. Grandmother returned to Arizona six days later.

¶5        The Department placed S.H. with a foster family and petitioned for dependency, alleging that Grandmother neglected S.H. by failing to provide proper supervision for her and to protect the baby from an unreasonable risk of harm. After a contested dependency hearing, the juvenile court adjudicated S.H. a dependent child. The court found that Grandmother was "vague on the details regarding what, if any, arrangements were made with ex-husband for the care of a small infant and two other minor children" when she left for Las Vegas. The court also found that although Grandmother was aware that the alleged Father was arrested, she did not return to Arizona to care for S.H. for several days. Grandmother timely appealed.

## DISCUSSION

¶6        Grandmother argues that insufficient evidence supports the juvenile court's dependency determination. We will not disturb the juvenile court's ruling in a dependency action unless the findings upon which it is based are clearly erroneous and no reasonable evidence supports them. *Oscar F. v. Dep't of Child Safety*, 235 Ariz. 266, 267–68 ¶ 6, 330 P.3d 1023, 1024–25 (App. 2014). But we review de novo the court's interpretation and application of the dependency statute. *Id.* The juvenile court, as the trier of fact, is "in the best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings." *Pima Cty. Dependency Action No. 93511*, 154 Ariz. 543, 546, 744 P.2d 455, 458 (App. 1987). Thus, the resolution of conflicting evidence is within the unique province of the juvenile court, and we will not reweigh the evidence. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47 ¶ 8, 83 P.3d 43, 47 (App. 2004). Here, sufficient evidence supports the juvenile court's dependency determination.

¶7        Before a child can be found dependent, the Department must prove by a preponderance of the evidence the allegations set forth in the dependency petition. A.R.S. § 8–844(C)(1); *Louis C. v. Dep't of Child Safety, J.C.*, 237 Ariz. 484, 488 ¶ 13, 353 P.3d 364, 368 (App. 2015). A "dependent child" is a child "[i]n need of proper and effective parental care and control

and who has no [guardian] . . . willing to exercise or capable of exercising such care and control" or "whose home is unfit by reason of abuse, neglect, cruelty or depravity by a [guardian]." A.R.S. § 8–201(14)(a)(i), (iii). "Neglect" is the "inability or unwillingness of a [guardian] of a child to provide that child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare." A.R.S. § 8–201(24)(a). An adjudication of dependency does not require a finding of fault on the guardian's part, *Matter of Appeal in Santa Cruz Cty. Juvenile Dependency Action Nos. JD-89-006 & JD-89-007*, 167 Ariz. 98, 102, 804 P.2d 827, 831 (App. 1990); instead, the primary consideration is the child's best interests, *Michael M. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 230, 234 ¶ 17, 172 P.3d 418, 422 (App. 2007).

¶8         Here, sufficient evidence supports the juvenile court's order adjudicating S.H. a dependent child. The record shows that Grandmother failed to make any specific arrangement for S.H.'s care when she left for Nevada and that, specifically during her testimony, Grandmother was vague about the details regarding what arrangements, if any, she had made with Grandfather or Great Grandmother for S.H.'s and her two other minor children's care. The record also shows that Grandmother failed to ensure that an appropriate caregiver would be available to look after S.H. at all times. Although Grandmother claimed that she left S.H. in Grandfather's care, she also stated that S.H.'s caregiver was decided on a voluntary basis and that she was not the decision-maker. She also admitted that she knew that Grandfather worked at a nightclub, but claimed that because "everyone [in the family] was together" and that she "wasn't there," the decision-making regarding who would care for S.H. was left to whoever was present at that moment.

¶9         The record further shows that Grandmother's failure to arrange proper supervision or delineate the details for S.H.'s care resulted in an unreasonable risk of harm to the five-month-old baby. When Grandfather went to work, he left the baby with the alleged Father, who then drove with a BAC level of 0.124 with S.H. in the car. A witness described the alleged Father as "passed-out" at the wheel. Moreover, even after Grandmother learned of the DUI incident, she failed to return to Arizona and instead stayed for another six days and failed to arrange for appropriate care for S.H. while she was away. When the Department removed S.H., the baby was in the alleged Father's motel room with her uncle with Grandfather's permission; they were waiting for the alleged Father. Grandmother testified that although Grandfather had a lapse in judgment on two occasions for allowing the alleged Father to have access to S.H., she would nonetheless trust him to care for her children and S.H.

again. Consequently, sufficient evidence supports the juvenile court's order adjudicating S.H. a dependent child because Grandmother neglected the baby by failing to provide proper supervision and to protect the baby from an unreasonable risk of harm.

## CONCLUSION

¶10 For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama