NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(C), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

ADAM W., *Appellant*,

*v.*

TORI F., T.W., *Appellees*.

No. 1 CA-JV 19-0269
FILED 2-27-2020

Appeal from the Superior Court in Maricopa County
No. JS518084
The Honorable Lindsey G. Coates, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Denise L. Carroll Esq., Scottsdale
By Denise Lynn Carroll
*Counsel for Appellant*

Rubin & Ansel PLLC, Scottsdale
By Yvette D. Ansel
*Counsel for Appellee*

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which
Presiding Judge Samuel A. Thumma and Judge Diane M. Johnsen joined.

**H O W E**, Judge:

¶1        Adam W. ("Father") appeals from the juvenile court's order terminating his parental rights to his son, T.W. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Tori F. ("Mother") and Father are the natural parents of T.W., born in 2009. The parents' relationship ended about nine months after T.W.'s birth. For a time after that, Father visited T.W. and, in January 2011, the parents signed and notarized an agreement in which they agreed to share parenting time and Father agreed to pay Mother child support. According to Father, because the parents' interactions were acrimonious, he visited T.W. only about eight times after entering into this agreement. According to Mother, Father decided he no longer wanted parenting time after those eight visits because, as he put it, he did not want T.W. to be subjected to their fighting or "going back and forth" between them.

¶3        In 2012, the parents divorced. Although Father acknowledged receiving Mother's petition, in which she asked for sole legal decision-making and parenting time, he did not respond or appear at the hearing. As a result, the court entered a default divorce decree. The decree provided that Mother retained sole parenting time and legal decision-making for T.W.; Father had no parenting time but also owed no child support.

¶4        Father had no contact with T.W. after the divorce. In 2015, Father asked Mother for contact with T.W., but Mother told him to "file through the courts for time[,]" and he did not do so. After that, Father did not ask Mother for a visit with T.W. or send him any cards, gifts, or letters. Nor did he ever ask the court to modify the divorce decree.

¶5        In October 2018, Mother petitioned to terminate Father's parental rights based on abandonment. After an adjudication hearing, the court granted Mother's petition, and Father timely appealed.

## DISCUSSION

¶6        Father argues that insufficient evidence supports the termination order, and that, alternatively, he had just cause for abandoning T.W. because Mother prevented contact between them, and that insufficient evidence supports the finding that termination was in T.W.'s best interests. We review the termination of parental rights for an abuse of

discretion. *Sandra R. v. Dep't of Child Safety*, 246 Ariz. 180, 183 ¶ 6 (App. 2019). We will not reverse the juvenile court's termination order "unless no reasonable evidence supports its factual findings." *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287 ¶ 16 (App. 2016).

¶7 As the trier of fact, the juvenile court is in the "best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Oscar F. v. Dep't of Child Safety*, 235 Ariz. 266, 269 ¶ 13 (App. 2014). Accordingly, we will not reweigh the evidence on review. *Id.* To terminate a parent's parental rights, the juvenile court must find at least one statutory ground under A.R.S. § 8–533 by clear and convincing evidence, A.R.S. § 8–537(B), and by a preponderance of evidence that termination is in a child's best interests, *Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005).

¶8 The juvenile court may terminate parental rights when a "parent has abandoned [his] child." A.R.S. § 8–533(B)(1). "Abandonment" means

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8–531(1). A parent's conduct, not a parent's subjective intent, determines abandonment. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 18 (2000). When traditional means of bonding with a child are unavailable, a parent must act persistently to establish or maintain the relationship and must vigorously assert his legal rights "at the first and every opportunity." *Id.* at 251 ¶ 25.

¶9 Reasonable evidence supports the court's finding that Father failed to maintain a normal parental relationship for a period of greater than six months without just cause. Father had no contact or involvement in T.W.'s life after 2015 and never sought to modify the divorce decree, to the extent it might have prevented such contact or involvement. Father had about seven years to pursue parenting time through family court, but never did so. Nor did Father make any efforts outside of court to establish a relationship with T.W for nearly four years. Father's inaction supports the

court's finding that he "failed to undertake any of the myriad of responsibilities associated with parenting" for about four years.

¶10 Citing *Calvin B. v. Brittany B.*, 232 Ariz. 292 (App. 2013), Father argues that Mother prevented him from seeing T.W. Unlike the father in that case, however, Father did not show that he "actively sought more involvement" with the child than Mother would allow. *See id.* at 297 ¶ 22. Father asked to see T.W. only a few times between 2012 and 2015, and when Mother repeatedly told him to file his request through family court, he did not do so.

¶11 Reasonable evidence also supports the court's finding that severance was in T.W.'s best interests. "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148 ¶ 1 (2018). Relevant factors in this determination include whether the current placement is meeting the child's needs, an adoption plan is in place, and the child is adoptable. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3–4 ¶ 12 (2016).

¶12 During the four years preceding the termination hearing, T.W. had lived with Mother and her husband ("Stepfather"), and they had been providing for his needs. T.W. and Stepfather share a strong bond, and Stepfather planned to adopt T.W. Additionally, the social worker who evaluated the family concluded that T.W. was in "a stable, permanent home that is committed to meeting his long[-]term needs" and that terminating Father's parental rights would ensure "ongoing security and stability" for T.W.

## CONCLUSION

¶13 For the foregoing reasons, we affirm.

