NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JASMINE H., *Appellant,*

*v.*

BRIAN H., B.H., *Appellees.*

No. 1 CA-JV 20-0080
FILED 7-9-2020

Appeal from the Superior Court in Maricopa County
No. JS18207
The Honorable Glenn A. Allen, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Law Office of Ed Johnson PLLC, Peoria
By Edward D. Johnson
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge James B. Morse Jr. joined.

---

**P E R K I N S**, Judge:

¶1        Jasmine H. ("Mother") appeals from the juvenile court's severance of her parental rights to her son, B.H. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        Mother and Brian H. ("Father") are the biological parents of B.H., born in 2011. They divorced in 2014. In the dissolution decree, the court awarded Father sole legal-decision making as to B.H., and ordered that Mother have "no parenting time (visitation) at all because any time with [Mother] would endanger seriously the physical, mental, moral or emotional health of the child." Mother left Arizona in 2013 and has not seen B.H. in person since.

¶3        Father petitioned to terminate Mother's parental rights several times before the current petition. The juvenile court dismissed Father's first two petitions because he had not shown that termination was in B.H.'s best interests. His third petition went to mediation and the parties agreed to dismiss it without prejudice so Mother could petition to modify parenting time in family court. Father then filed a fourth petition that the juvenile court dismissed without prejudice, but authorized Father to refile if Mother failed to start family court proceedings by a set date.

¶4        Mother missed the deadline and Father filed the instant petition. After finding Mother failed to initiate family court proceedings as the parties agreed in the earlier mediation, the juvenile court granted the petition on abandonment grounds. Mother timely appealed.

## DISCUSSION

¶5        Mother argues the juvenile court erred in finding Mother abandoned B.H. She also contends the juvenile court erred in finding termination was in B.H.'s best interests.

¶6          We review the termination of parental rights for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). As the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Oscar F. v. Dep't of Child Safety*, 235 Ariz. 266, 269, ¶ 13 (App. 2014) (quoting *Ariz. Dep't Econ. Sec. v. Oscar O.*, 209 Ariz. 332, ¶ 4 (App. 2004)). Accordingly, we will not reweigh the evidence on review. *Oscar F.*, 235 Ariz. at ¶ 13.

¶7          "Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." *Santosky v. Kramer*, 455 U.S. 745, 747–48. "[S]uch a standard adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process." *Id.* at 769. This court will uphold the juvenile court's findings of fact "if supported by adequate evidence in the record." *Christy C. v. Ariz. Dep't Econ. Sec.*, 214 Ariz. 445, 452, ¶ 19 (App. 2007) (quoting *State v. Smith*, 123 Ariz. 243, 247 (1979)).

## I.          Abandonment

¶8          The juvenile court terminated Mother's parental rights to B.H., finding abandonment. *See* A.R.S. § 8-533(B)(1). Abandonment is:

> [T]he failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1).

¶9          We have held that the juvenile court must consider each of the factors in A.R.S. § 8-531(1) and determine whether the parent has tried to establish or strengthen the parent's emotional connection with her child. *Kenneth B. v. Tina B.*, 226 Ariz. 33, 37, ¶¶ 18, 21 (App. 2010). While reasonable support, regular contact, and normal supervision may vary from case to case, we measure abandonment by a parent's conduct and not her subjective intent. *Michael J. v. Ariz. Dep't Econ. Sec.*, 196 Ariz. 246, 249–50, ¶¶ 18, 20 (2000). When circumstances prevent the parent from "exercising traditional methods of bonding with [her] child, [she] must act

3

persistently to establish the relationship however possible and must vigorously assert [her] legal rights to the extent necessary." *Id.* at ¶ 22.

¶10 First, Mother argues the juvenile court erred as a matter of law because it did not consider whether she was an "unfit parent." She contends that, because there was evidence Mother was taking care of two other children at the time of termination, she could not, by definition, be an unfit parent. We disagree. While this evidence may be relevant to whether Mother is a fit parent generally, it does not bear on whether she abandoned B.H. under A.R.S. § 8-531(1).

¶11 Second, Mother argues insufficient evidence supported termination under the abandonment ground. The record contradicts this contention. Mother testified at the termination hearing that she moved away from Arizona in 2013 – when B.H. was about two years old – and has not seen him since. She also stated that, at first, she could not return to Arizona because of her employment on an oil rig, but she also testified that she left that job in 2014.

¶12 Mother testified that she has provided no court-ordered child support to B.H. While Mother did state that she tried to have gifts delivered to B.H. in 2014 and 2015, Father testified that he never received any gifts. Mother also testified that she did not make any further attempts to send gifts because she was "tired" and because it was "emotionally draining."

¶13 The evidence also shows sporadic contact at best between Mother and B.H. Mother had several "video chats" with B.H. in 2013 and 2014. She also made sporadic phone calls in the fall of 2019, but those "tapered off."

¶14 Nor has Mother ever petitioned to modify parenting time in family court – even after Father agreed to dismiss his termination petition to allow her to do so, and even after the juvenile court explicitly authorized her to do so. Substantial evidence supports the juvenile court's finding that Mother failed to provide reasonable support, regular contact, and normal supervision to B.H. The juvenile court did not abuse its discretion in finding Mother abandoned B.H.

## II.    Best Interests

¶15 Mother also argues the juvenile court erred in determining termination was in B.H.'s best interests.

**¶16**        Termination of the parent-child relationship is in the child's best interests when the child would benefit from the termination or be harmed by continuation of the relationship. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 13 (2018). A child benefits from termination when the child is adoptable or a current adoption plan is in place. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3–4, ¶ 12 (2016). When a statutory ground for severance has been proven, the juvenile court must balance the child's interest in a safe and stable home against the unfit parent's "diluted" interest in the care of the child. *Id.* at 4, ¶ 15 (quoting *Kent K. v. Bobby M.*, 210 Ariz. 279, 286, ¶ 35 (2016)).

**¶17**        Father's current spouse testified at the termination hearing that she had been involved in B.H.'s life for about six years. She claimed that she had a parental relationship with B.H. and testified that he "has called [her] mom since day one." Finally, she testified that she would be willing to adopt B.H. and accept him as her son if granted the opportunity.

**¶18**        Father also testified that he would like his current spouse to adopt B.H., and explained that it would be in B.H.'s best interests for her to do so "[b]ecause it would give [B.H.] the mother that will love him and give him everything he needs and the attention and love that he deserves." He also stated that, despite Mother's recent phone conversations with B.H., termination would still be in B.H.'s best interests "[b]ecause of the inconsistency, the unwillingness to really have a constant relationship with [B.H.] . . . ."

**¶19**        Substantial evidence supports the juvenile court's determination that B.H. would benefit from termination, and that "[a]ny disruption to the current family unit would be a detriment." We find no error.

## CONCLUSION

**¶20**        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA