NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JULIETTE F. *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.M., N.M., N.Y., *Appellees*.

No. 1 CA-JV 20-0335

FILED 05-13-2021

Appeal from the Superior Court in La Paz County
No. S1500JD202000008
The Honorable Jessica L. Quickle, Judge

**AFFIRMED**

COUNSEL

Carr Law Office, PLLC, Kingman
By Sandra Carr
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Doriane Neaverth
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Brian Y. Furuya joined.

---

**T H U M M A**, Judge:

¶1   This is an appeal from a child dependency order. Because sufficient evidence supports the dependency finding, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2   Juliette F. (Mother) is the mother of four minor children: J.M., N.M., N.Y. and Z.S. DCS filed a dependency petition regarding the three oldest children, J.M., N.M. and N.Y. Mother denied the allegations, and the court received evidence of the following facts at a two-day adjudication.

¶3   Mother has an extensive history of mental illness, criminality and removal of children in her care by both California and Arizona child-protection agencies. The events underlying this dependency began in early 2020. In March 2020, Mother took Z.S. from his father (who had sole legal and physical custody) and refused to return Z.S. or disclose their location. On April 9, 2020, Mother told California law enforcement that Z.S.'s father had sexually abused him. On April 16, 2020, a detective discussed the report with Mother. The detective reported that Mother demonstrated disorganized thinking and erratic, delusional thought processes.

¶4   The detective contacted California's child-protection agency, which in turn contacted the Arizona Department of Child Safety (DCS). DCS and Arizona law enforcement went to Mother's Arizona apartment on April 18, 2020. Mother initially stuck her head out of an apartment window but then withdrew, refused to respond and barricaded the doors. She spoke with one of the officers telephonically, alternately speaking as herself and as her "attorney" and claiming, among other things, that neither she nor her children were in the apartment. She also called the California detective and left a rambling voicemail in which she alternately spoke as herself, an attorney and an unidentified third person. Law enforcement eventually obtained a search warrant, forcibly entered the apartment and removed Mother and the four children. Mother was charged with custodial interference and resisting arrest, and taken to jail. DCS took custody of J.M.,

N.M. and N.Y., and returned Z.S. to his father, who was cleared of Mother's sexual-abuse allegations.

¶5        A psychologist evaluated Mother and diagnosed her with delusional and personality disorders. The psychologist opined that the children had been harmed by Mother's unresolved mental health issues and would not be safe in her care. The psychologist further explained that Mother had not benefited from her long-term therapy, and to benefit she would need to become motivated to change. Separate psychological evaluations of J.M., N.M. and N.Y. resulted in each being diagnosed with post-traumatic stress disorder among other things. The children were found to be significantly delayed academically, and the children's fathers testified that Mother had isolated the children from them.

¶6        Mother continued to act erratically while J.M., N.M. and N.Y. were in care. She engaged in criminal behavior, sent aggressive communications to DCS, refused the parenting-skills component of parent-aide services, repeatedly failed to show up for transportation to visits, disrupted a child and family team meeting causing it to end early, interacted inappropriately with the children during visits, attempted to purchase a firearm in violation of a restraining order, threatened witnesses and published online accusations that DCS had kidnapped and sex-trafficked the children. She denied being diagnosed with mental illness, denied that the children were cognitively delayed and claimed to have successfully homeschooled the children.

¶7        The superior court concluded that J.M., N.M. and N.Y. were dependent as to Mother. The court found Mother "unwilling or unable to provide proper and effective parental care and control by neglecting to properly treat her mental health," which created "a barrier to her decision making as a caregiver, not allowing her to make safe and rational decisions for her children." The court further found Mother's home "unfit due to neglect," citing, among other things, the children's academic delays, Mother's failure to care for their mental health needs and Mother's "inappropriate and unpredictable" behavior as a caregiver.

¶8        Mother timely appeals, challenging the sufficiency of the evidence. This court has jurisdiction under Arizona Revised Statutes (A.R.S.) §§ 8-235(A) and 12-130.21(A)(1) (2021).[1]

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

## DISCUSSION

**¶9**        Evidence is reviewed in the light most favorable to affirming a dependency order, which will not be disturbed unless no reasonable evidence supports it. *Oscar F. v. Dep't of Child Safety*, 235 Ariz. 266, 267 ¶ 6 (App. 2014). Evidence is not reweighed on appeal; the superior court, "as the trier of fact, 'is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts.'" *Id.* at 269 ¶ 13 (citing cases).

**¶10**        Dependency must be established by a preponderance of the evidence. A.R.S. § 8-844(C)(1); *Cochise Cnty. Juv. Action No. 5666-J*, 133 Ariz. 157, 159 (1982). A child is dependent if he or she is "[i]n need of proper and effective parental care and control and . . . has no parent . . . willing to exercise or capable of exercising such care and control," or if he or she has a "home [that] is unfit by reason of . . . neglect . . . by a parent." A.R.S. § 8-201(15)(a)(i), (iii). "Neglect" includes "[t]he inability or unwillingness of a parent . . . to provide th[e] child with supervision . . . or medical care if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare." A.R.S. § 8-201(25)(a).

**¶11**        "Proper and effective parental care and control" and "neglect" are context-specific terms. *Joelle M. v. Dep't of Child Safety*, 245 Ariz. 525, 527–28 ¶¶ 12–13 (App. 2018); *Pima Cnty. Juv. Action No. J-31853*, 18 Ariz. App. 219, 222 (1972). The court must "consider the discrete and special needs of the particular child, both to protect the child's best interest and meaningfully assess the parent's willingness and ability to provide proper and effective parental care and control for that child." *Joelle M.*, 245 Ariz. at 527 ¶ 12. Mental illness does not inevitably render a parent neglectful or incapable of exercising proper and effective parental care and control — but it may do so if the mental illness has a "seriously adverse effect upon the child" given the child's needs. *J-31853*, 18 Ariz. App. at 223 (citing cases). Although the dependency inquiry assesses a parent's present capabilities to parent, the parent's past conduct related to adverse circumstances that remain unresolved is relevant to the dependency finding. *Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 299 ¶ 28 (App. 2020). A parent's "denial of responsibility [for past neglect] supports a finding that [his or her] children do not have [a] parent[ ] presently willing to or capable of exercising proper and effective parental care and control." *Pima Cnty. Juv. Dependency Action No. 96290*, 162 Ariz. 601, 604 (App. 1990).

**¶12** Here, ample evidence supports the court's finding that the children were dependent as to Mother based on neglect and her inability to provide proper and effective parental care and control. Mother emphasizes that she adequately fed, clothed and sheltered the children. Mother, however, ignores evidence that her mental illness caused her to engage in erratic behavior resulting in the children suffering significant psychological harm,[2] and that she denied her mental illness and continued to act erratically throughout the dependency. Evidence also established Mother failed to recognize the children's significant mental-health needs, and she denied their significant cognitive and academic delays.

## CONCLUSION

**¶13** Because sufficient evidence supported the order finding J.M., N.M. and N.Y. dependent as to Mother, it is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:                HB

---

[2] Mother appears to blame law enforcement for any trauma the children suffered from the events of April 18, 2020. Specifically, she contends she was trying to protect Z.S. from his abuser and that law enforcement forcibly removed the children from her apartment by means of a defective warrant. The legality of Mother's and law enforcement's actions was not before the juvenile court. Moreover, even if third parties' actions deleteriously affected the children, the record is replete with evidence that Mother's behavior independently harmed them.