NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE DEPENDENCY AS TO A.S.

No. 1 CA-JV 22-0283
FILED 5-25-2023

Appeal from the Superior Court in Maricopa County
No. JD534974
The Honorable Amanda M. Parker, Judge

**AFFIRMED**

COUNSEL

John L. Popilek PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Angela K. Paton and Judge D. Steven Williams joined.

---

**P E R K I N S**, Judge:

¶1             Maria S. ("Mother") appeals the juvenile court's order adjudicating her daughter, A.S. ("Child"), dependent based on Child's behaviors and neglect. A.R.S. § 8-201(15)(a)(i), (iii). For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2             Mother is the biological aunt and adoptive mother of Child, born in 2005. Mother adopted Child as a single parent when Child was one year old. She is married to Maurice S. ("Husband"), who is not Child's legal father.

¶3             Child has been diagnosed with asthma, attention-deficit hyperactivity disorder ("ADHD"), oppositional defiant disorder, and learning disabilities. She has had an individualized education plan ("IEP") in place since 2017 to address her emotional, behavioral, and learning needs.

¶4             In December 2020, Child stole $550 worth of jewelry from Mother. Mother reported the incident to law enforcement, and Child admitted to the investigating officer that she stole the jewelry after an argument with Mother and Husband. Mother declined to file charges but no longer allowed Child to be in the home without supervision.

¶5             Child began running away from home in October 2021. Mother was uncertain exactly how many times Child ran away, but it was "excessive." She filed at least four missing person reports for Child between October 2021 and April 2022. One officer's follow-up report described Child as a "habitual runaway who does not listen to her mother and returns home whenever she wants." Mother eventually learned that Child often resided with her friend, Blake (we use a pseudonym to protect the minor child's identity). Between October 2021 and August 2022, Mother contacted Blake's family twice to check on Child.

¶6 Approximately four months after Child started running away, Mother and Husband moved into a two-bedroom apartment. Before the move, Child had her own bedroom. But because Child began smoking marijuana in her bedroom and stashed Mother and Husband's personal belongings there on occasion, Mother did not permit Child to have her own room in the new apartment. She permitted Child to sleep in the same room as her—while Husband slept in the other room—though Child elected to sleep on the living room sofa. Mother stated that although Child had a dresser for her clothes, she "refused to use it," and kept her clothes around the living room.

¶7 On August 25, 2022, the Department of Child Safety ("DCS") obtained temporary custody of Child after she reported conflict in the home and feeling unwanted and unsupported by Mother and Husband. DCS filed a dependency petition five days later. The petition, as summarized by the juvenile court, focused on two categories of alleged neglect by Mother: (1) locking Child out of the home with no plan in place for shelter or food, and (2) failing to obtain medical and behavioral services for Child.

¶8 Specifically, DCS alleged Mother has an "extremely negative perception" of Child and has not engaged in any services to address her behavioral needs since Child began running away. DCS also alleged Mother was not properly caring for Child's asthma, and locked Child out of the home if she missed her curfew. The juvenile court set a dependency hearing, finding that, based on DCS's allegations, it would be contrary to Child's welfare to remain in the home.

¶9 At the three-day contested dependency hearing, the court heard testimony from Mother, Mother's two biological sons, and the Department's investigative case manager. Though the court found Mother's sons to be credible, it concluded that their testimony "added little" to its determinations because neither resided with Mother or Child during the relevant time periods.

¶10 The court concluded it is more likely than not that Mother failed to obtain proper behavioral and mental health services for Child. It found that Mother's only effort in seeking treatment for Child's mental and behavioral needs was attending a yearly IEP meeting at Child's school. The court ruled that Mother's refusal to seek proper treatment for Child placed her health and welfare at risk.

¶11 The court also concluded it is more likely than not that Child was often locked out of the home with no plan in place for shelter. The court

found it "very relevant" that Mother and Husband moved into a new apartment after Child started running away and did not provide Child with her own room at the new home. The court found it more likely than not that Mother and Husband moved to this new residence "with no intention of providing a home for [Child], and with no intention of seeking treatment for her behaviors."

¶12　　　　The juvenile court adjudicated Child dependent based on its finding that Mother failed to provide for Child's basic needs, including adequate shelter, and that she failed to obtain proper behavioral and mental health services for Child. Mother timely appealed. We have jurisdiction. Ariz. Const. art. VI, § 9; A.R.S. §§ 8-235(A), 12-120.21(A)(1), 12-2101(A)(1).

## DISCUSSION

¶13　　　　We review a dependency finding for an abuse of discretion, *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶ 12 (App. 2015), and will affirm a dependency adjudication "unless no reasonable evidence supports it," *Oscar F. v. Dep't of Child Safety*, 235 Ariz. 266, 267, ¶ 6 (App. 2014) (quotation omitted). The juvenile court is in the best position to weigh the evidence, and "we will not reweigh the evidence on review." *Louis C.*, 237 Ariz. at 488, ¶ 14.

¶14　　　　The allegations in a dependency petition must be proven by a preponderance of the evidence. A.R.S. § 8-844(C)(1). This standard requires the factfinder to determine whether a fact sought to be proved is more probable than not. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 25 (2005). Because the primary concern in a dependency case is always the child's best interests, *Joelle M. v. Dep't of Child Safety*, 245 Ariz. 525, 527, ¶ 10 (App. 2018), the juvenile court "is vested with a great deal of discretion." *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21 (App. 2005) (quotation omitted).

¶15　　　　A dependent child is one "[i]n need of proper and effective parental care and control . . . who has no parent . . . willing to exercise or capable of exercising such care and control," A.R.S. § 8-201(15)(a)(i), or a child "whose home is unfit by reason of abuse, neglect, cruelty or depravity by a parent," A.R.S. § 8-201(15)(a)(iii). "Neglect" means "[t]he inability or unwillingness of a parent . . . of a child to provide that child with supervision . . . if that inability or unwillingness causes substantial risk of harm to the child's health or welfare." A.R.S. § 8-201(25)(a).

¶16　　　　The juvenile court found, by a preponderance of the evidence, that Child is in need of effective parental care and control, and Mother is unwilling to provide this care and control. The court relied on Mother's

failure to engage Child in proper health services—despite Child's escalating behaviors, mental health conditions, and tendency to run away.

**¶17**        The court also relied on the fact that between October 2021 and August 2022, Mother only contacted Blake's family twice to check on Child or offer any support. It found that Mother's testimony about Child's access into the home was inconsistent, and the fact that Child did not have her own room indicated that Mother and Husband were not intending for Child to reside there.

**¶18**        Mother contends the record is devoid of any evidence establishing neglect, or demonstrating dependency is in Child's best interests. She argues that Child is not dependent merely because Child is "an emotionally troubled young woman."

**¶19**        Reasonable evidence shows that Mother was unwilling or unable to provide effective supervision of Child. Mother failed to seek proper services as Child demonstrated difficult behaviors and consistently ran away. When DCS offered family counseling services, Mother declined to participate. And she did not communicate any willingness to have Child back in her home until she was asked at trial. Reasonable evidence in the record supports the juvenile court's findings. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002) (we do not reweigh the evidence and will defer to the court's resolution when supported by the record).

## CONCLUSION

**¶20**        We affirm.

